**ALLIED MATERIALS & EQUIPMENT CO., INC.**

v.

**The UNITED STATES.**

No. 342–75.

United States Court of Claims.

Jan. 25, 1978.

Charles E. Raley, Washington, D.C., attorney of record for plaintiff; Israel & Raley, Washington, D.C., of counsel.

Robert M. Hollis, Washington, D.C., with whom was Asst. Atty. Gen. Barbara Allen Babcock, Washington, D.C., for defendant.

Before NICHOLS, Judge, Presiding, and KASHIWA and BENNETT, Judges.

## ON PLAINTIFF'S MOTION FOR REHEARING EN BANC

PER CURIAM:

In an order of September 30, 1977, the court denied defendant's motion and plaintiff's cross-motion for summary judgment, and remanded the case to the Trial Division. Plaintiff has now moved for a rehearing *en banc* of its cross-motion for summary judgment. Defendant has filed a brief in opposition.

Briefly, this action was brought to recover anticipatory profits and more on the ground that defendant breached a contract under which plaintiff was to supply cylinder assemblies to the Army. The alleged breach was accomplished by defendant's sale to a competitor of certain tooling equipment which was contractually obligated for use by plaintiff in performing the contract. Oral argument was heard on June 6, 1977, after which the aforementioned order was issued, remanding the case for further development of certain issues by the trial judge. In particular, we instructed the trial judge to determine whether defendant's sale of the production equipment had effected a cardinal change in the contract, within the meaning of such precedents as, *e. g., Edward R. Marden Corp. v. United States*, 194 Ct.Cl. 799, 442 F.2d 364 (1971) and *Air-A-Plane Corp. v. United States*, 408 F.2d 1030, 187 Ct.Cl. 269 (1969). If the trial judge found that there was a cardinal change, thus providing this court with jurisdiction, he was then to determine whether the government was dealing in bad faith prior to and in effecting the termination for convenience.

Both parties have questioned the propriety of framing the issue as whether the sale of equipment was a cardinal change. The court's instructions to the trial judge were not inadvertent, and our position will be further explained in response to each party's contentions.

It is defendant's position that the cardinal change doctrine applies only when a plaintiff seeks extra costs incurred because of a deviation from contract terms, but which are not recoverable under the contract. Defendant states that the cardinal change principle is "obviously irrelevant where plaintiff is instead seeking anticipated profits and lost revenues." Inherent in this statement, however, is the fallacious assumption that the cardinal change concept's applicability is dictated by the nature of damages sought by a plaintiff. This is simply not so. Under established case law, a cardinal change is a breach. It occurs when the government effects an alteration in the work so drastic that it effectively requires the contractor to perform duties materially different from those originally

bargained for. By definition, then a cardinal change is so profound that it is not redressable under the contract, and thus renders the government in breach. *See, e. g., Edward R. Marden Corp. v. United States, supra,* 442 F.2d at 369, 194 Ct.Cl. at 808; *Air-A-Plane Corp. v. United States, supra,* 408 F.2d at 1033, 187 Ct.Cl. at 275–76; *Keco Industries, Inc. v. United States,* 364 F.2d 838, 847–48, 176 Ct.Cl. 983, 998–99 (1966), *cert. denied,* 386 U.S. 958, 87 S.Ct. 1087, 18 L.Ed.2d 105 (1967); *Aragona Construction Co. v. United States,* 165 Ct.Cl. 382, 390–91 (1964). In *Marden, supra,* we specifically stated that the purpose of the cardinal change doctrine is "to provide a breach remedy for contractors who are directed by the government to perform work which is not within the general scope of the contract." We have certainly never intimated, however, that the contractor is limited to a suit for extra costs incurred in performing duties fundamentally outside of the scope of the contract, and we have never held that the applicability of this doctrine is in any way dependent on the nature of damages sought by the contractor. Although the typical case, thus far, has featured a plaintiff who undertook to perform despite the alteration of contractual obligations, this does not preclude a suit by a contractor who, for one reason or another, has not completed the contract. Undoubtedly, the cautious contractor might often proceed under the revised contract because of doubt whether he could invoke the cardinal change doctrine. But if he has been prevented from performing, as in any breach case, the award of anticipatory profits is an appropriate remedy. *See Carchia v. United States,* 485 F.2d 622, 625, 202 Ct.Cl. 723, 729 (1973); *General Builders Supply Co. v. United States,* 409 F.2d 246, 251, 187 Ct.Cl. 477, 485–86 (1969); *J. D. Hedin Construction Co. v. United States,* 408 F.2d 424, 431–32, 187 Ct.Cl. 45, 58–59 (1969).

■ Conversely, it would seem at least moderately obvious that the failure to furnish property the government promised to furnish would sometimes be remediable under the contract and therefore would not always be a breach. *Compare S. S. Mullen, Inc. v. United States,* 389 F.2d 390, 182 Ct.Cl. 1 (1968) *with Chris Berg, Inc. v. United States,* 389 F.2d 401, 182 Ct.Cl. 23 (1968).

■ Plaintiff also is of the opinion that cardinal change analysis is misapplied in this particular context. In support of this position, plaintiff notes that the standard changes clause in its contract is limited to variances in "drawings, designs, or specifications, where the supplies to be furnished are to be specially manufactured for the government in accordance therewith; method of shipment or packing; and place of delivery." The contract also contains a Government Furnished Property clause authorizing equitable adjustments for "any delay in delivery of government-furnished property; delivery of such property in a condition not suitable for its intended use; and any withdrawal of authority to use property." Plaintiff apparently reasons that the presence of a separate clause pertaining to the availability of the production facilities for use by Allied renders the cardinal changes doctrine inapplicable. There is no need to read the doctrine so restrictively as to hold that it applies only to deviations which are specifically within the conventional changes clause. The doctrine is couched in terms which apply generally to modifications which are so fundamental that they cannot be redressed within the contract by an equitable adjustment to the contract price, whether under the Government Furnished Property clause, the traditional changes clause, or any other. As we noted earlier, some variances in the availability of property contractually to be furnished by the government might well be remediable under the contract by an equitable adjustment.

■ In the order of September 30, 1977, it was stated that "[t]here may be sufficient foundation for our de novo jurisdiction in this case if plaintiff proves only a breach of contract, not remediable by change order." We might better have said, and now say, that plaintiff must show a breach not remediable by an equitable adjustment under the contract.

Plaintiff contends, secondly, that in any event the comprehensive record developed in the prior ASBCA proceedings conclusively demonstrates that the sale of the tooled equipment constituted a cardinal change. Thus, argues plaintiff, no additional trial is necessary on this point, and the case is ripe for summary judgment. Again, whether or not the ASBCA record is comprehensive, the Board did not engage in fact-finding specifically with regard to whether the sale of the government machinery constituted a cardinal change, as this issue was not raised by either party at the ASBCA level. Even when underlying facts are established, the drawing of conclusions as to ultimate facts is still a fact-finding function.

The existence of a cardinal change is principally a question of fact, requiring that each case be analyzed individually in light of the totality of circumstances. *See Wunderlich Contracting Co. v. United States*, 173 Ct.Cl. 180, 194, 351 F.2d 956, 966 (1965); *Saddler v. United States*, 152 Ct.Cl. 557, 561, 287 F.2d 411, 413 (1961). It may well be that plaintiff will be able to satisfy the burden of going forward with a prima facie case simply by offering the record from the ASBCA proceedings. Since the applicability of the cardinal change doctrine was not before the Board, however, defendant should be afforded the opportunity to present any relevant evidence to the trial judge before this matter is finally resolved.

Plaintiff has similarly criticized our order for directing a trial on the subject of defendant's bad faith, if any, in terminating the contract for convenience, on the ground that the comprehensive ASBCA record conclusively established defendant's bad faith. As we suggested in the order, the Board did not consider whether the termination for convenience was issued in bad faith, but rather directed its efforts toward the issue of defendant's bad faith in negotiating the termination settlement. Again, if plaintiff regards the Board record as sufficiently comprehensive, it has the option of resting on that record. Defendant is nevertheless entitled to an opportunity to present additional evidence on this point.

For the foregoing reasons, and a majority of judges on active service not having voted to rehear the case *en banc*, it is ordered that plaintiff's motion for a rehearing of its cross-motion for summary judgment is denied, and the case is remanded to the Trial Division for further proceedings in accordance with our order of September 30, 1977.