**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

HANCOCK ELECTRONICS CORPORATION,
Plaintiff-Appellant,

v.

No. 95-2159

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY,
Defendant-Appellee.

HANCOCK ELECTRONICS CORPORATION,
Plaintiff-Appellant,

v.

No. 95-2920

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY,
Defendant-Appellee.

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton and Leonie M. Brinkema, District Judges.
(CA-95-626-A)

Argued: December 7, 1995

Decided: April 16, 1996

Before WILKINSON, Chief Judge, and RUSSELL and
NIEMEYER, Circuit Judges.

_____

Affirmed by published opinion. Judge Niemeyer wrote the opinion,
in which Chief Judge Wilkinson and Judge Russell joined.

_____

**COUNSEL**

**ARGUED:** Thomas Blaisdell Smith, ROPES & GRAY, Washington, D.C., for Appellant. Joseph John Zimmerman, Assistant General Counsel, WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Washington, D.C., for Appellee. **ON BRIEF:** Brian S. Chilton, ROPES & GRAY, Washington, D.C.; Steven A. Kaufman, E. David Pemstein, ROPES & GRAY, Boston, Massachusetts, for Appellant. Robert L. Polk, General Counsel, Carol B. O'Keeffe, Principal Deputy General Counsel, WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Washington, D.C., for Appellee.

_____

**OPINION**

NIEMEYER, Circuit Judge:

Hancock Electronics Corporation, a Massachusetts company, filed suit in May 1995 against Washington Metropolitan Area Transit Authority (WMATA) for damages resulting from an alleged breach of contract. The district court dismissed the action without prejudice on the ground that Hancock had failed to exhaust its contractually prescribed administrative remedies. We affirm.

I

WMATA, a quasi-governmental agency created by an interstate compact and approved by Congress to provide a rapid transit system for the Washington, D.C., metropolitan area, awarded Hancock a contract in spring 1994 to provide replacement braking systems for approximately 300 rail cars. The contract obligated Hancock to design, manufacture, and install the braking systems, which contain both mechanical and electronic components. The contract also required Hancock to demonstrate its contract performance to WMATA through testing and to provide WMATA with certain technical data about the systems.

WMATA contends that it does not possess the equipment or expertise to monitor testing of the systems' software and, consequently,

2

that it was required to subcontract that function to a third party. Shortly before the scheduled testing of the brake systems in April 1995, WMATA wrote to Hancock, "You are kindly reminded that Hancock Electronics can not [sic] start qualification testing unless the technical documentation requested in the Reference is received and reviewed." Less than a week later, WMATA again advised Hancock that qualification testing "will not be permitted" until Hancock submits "all technical data including software to WMATA." WMATA also demanded Hancock's permission to provide the technical data to a third party to determine "whether the data is sufficient and complete for a Failure Modes and Effects Analysis." At WMATA's request, the third party agreed to enter into a lifetime nondisclosure agreement with Hancock to protect Hancock's proprietary information, and WMATA's contracting officer averred in his affidavit that Hancock had consented, during a telephone conversation on April 7, 1995, "to disclose the technical data and software documentation to [the third party] provided that [the third party] entered into a lifetime nondisclosure agreement."

Hancock, however, responded that its technical data and software are proprietary and that its contract with WMATA does not provide for their disclosure either to WMATA or to a third party. It further claimed that WMATA's insistence that the data and software be provided before Hancock conducted contractually required qualification testing constituted a breach of their contract. On May 11, 1995, Hancock notified WMATA by letter that WMATA's breach prevented and excused Hancock's further performance of the contract and, therefore, that Hancock was treating the contract as terminated. That same day, Hancock filed suit against WMATA in the district court for breach of contract, demanding more than $2 million in damages.

WMATA thereafter informed Hancock that WMATA was terminating the contract pursuant to the contract's Default Clause, contending that Hancock's May 11 letter, its lawsuit, its cancellation of a subcontract, and its "failure to deliver the technical data as of June 15, 1995 . . . constitute a repudiation and abandonment of all work under the contract." WMATA's contracting officer stated that his decision was a "Final Decision . . . appealable under the Disputes Clause of the contract." WMATA also filed a motion to dismiss Hancock's

3

complaint on the ground that Hancock had not exhausted its contractually prescribed administrative remedies.

Following a hearing, the district court granted WMATA's motion to dismiss Hancock's complaint without prejudice. The court concluded that even if WMATA had breached the contract, the contract's "termination for convenience" provision limited WMATA's liability and required Hancock to avail itself of the specified administrative procedures. This appeal followed.

II

The contract between the parties in this case is a standard government contract containing a Disputes Clause, a Default Clause, and a Termination for Convenience Clause. The Disputes Clause states that "[e]xcept as otherwise provided . . . any dispute concerning a question of fact arising under this Contract which is not disposed of by agreement shall be decided by the Contracting Officer." The Clause gives Hancock the right to appeal to WMATA's Board of Directors or its authorized representative, which in this case is the Army Corps of Engineers Board of Contract Appeals. Ultimately, decisions resolving factual disputes under the contract are reviewable by the courts under a deferential standard.

The Default Clause permits WMATA to declare the contractor in default and sets forth the procedures that the parties must follow when a default has been declared. If the parties are unable to agree on a resolution, the Clause provides that their disagreement shall constitute "a dispute concerning a question of fact within the meaning of the DISPUTES article of this Contract."

Finally, the Termination for Convenience Clause confers upon WMATA the option of terminating the contract "whenever the Contracting Officer shall determine that such termination is in the best interest of [WMATA]." The Clause provides for a quantum meruit adjustment for performance already rendered by the contractor. Again, any disputes about the parties' disengagement under the Termination for Convenience Clause are to be resolved according to the Disputes Clause.

4

Under settled law, whether WMATA breaches or wrongfully terminates a contract, the event is treated as a constructive termination under the Termination for Convenience Clause. See, e.g., General Builders Supply Co. v. United States, 409 F.2d 246, 249 (Ct. Cl. 1969). The law thus recognizes that, in entering into a contract, the government limits its potential liability to the value of the performance rendered at the time it terminates the contract for convenience. The combination of Termination for Convenience, Default, and Dispute Clauses in Hancock's contract with WMATA provides in essence that upon WMATA's default, Hancock is entitled to its quantum meruit performance under the contract but not its anticipated profits. See generally Ralph C. Nash, Jr. & John Cibinic, Jr., Federal Procurement Law 1104, 1124 (3d ed. 1980). The principle is unique to government contracts and well understood by parties entering into such contracts.

III

Hancock does not take issue with these generally established tenets of government contract law. Rather, it seeks to invoke an exception that applies when a government agency effects a cardinal change to a government contract, thereby nullifying the contract and denying the government agency the privilege of relying on any of the contract's dispute resolution provisions. A cardinal change occurs--and subjects the government to a suit for damages in court--when the government demands a contractual alteration "so drastic that it effectively requires the contractor to perform duties materially different from those originally bargained for." Allied Materials & Equip. Co. v. United States, 569 F.2d 562, 563-64 (Ct. Cl. 1978) (per curiam).

In this case, WMATA's demands, even if not covered by the contract, did not effect a cardinal change to the contract so as to nullify the contract's dispute resolution mechanisms. The electronic aspects of Hancock's replacement brakes had to be tested, and WMATA was entitled under the contract to determine whether they qualified. Because the brakes contained, as one of their specified components, a complex electronic system, WMATA insisted that it needed the electronic software to understand whether its tests qualified the brakes. Whether or not the contract requires Hancock to release its proprietary software, Hancock had already created the software in the

5

course of performing the contract and acknowledged, as the tests were about to begin, that it had the software with it. Hancock simply would not permit WMATA to use the software, particularly when that use would involve a third party's assistance.

Thus, the entire dispute between WMATA and Hancock reduces to whether Hancock was required to turn over work it had already completed. No one claims that Hancock had to perform extra work or develop new information to comply with WMATA's request. While the contract explicitly provides for the production of certain technical data, whether software and design data fall within that requirement is not clear. What is clear, however, is that WMATA's demand did not amount to a cardinal change to the contract. This dispute is typical of those intended to be resolved through the administrative process that the parties consented to by contract.

Accordingly, we affirm the district court's dismissal of Hancock's complaint without prejudice. In so doing, we express no view on the merits of the parties' underlying dispute. Our decision renders moot Hancock's appeal from the district court's denial of its motion for a preliminary injunction.

AFFIRMED