106 F.3d 426
 41 Cont.Cas.Fed. (CCH) P 77,036
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
CONTACT INTERNATIONAL, INC., Appellant,
v.
Sheila E. WIDNALL, Secretary of the Air Force, Appellee.
 No. 96-1133.
 United States Court of Appeals, Federal Circuit.
 Jan. 15, 1997.
 
 Before RICH, CLEVENGER, and SCHALL, Circuit Judges.
 SCHALL, Circuit Judge.
 
 DECISION
 
 1
 Contact International, Inc. (Contact) appeals from the August 31, 1995 decision of the Armed Services Board of Contract Appeals (Board) in Contact International Corp., ASB CA No. 44636. In its decision, the Board sustained in part and denied in part Contact's appeal of a contracting officer's final decision denying Contact's claim for additional compensation and for damages for breach of contract under a fixed-price requirements contract between Contact and the United States Air Force (Air Force or government). Pursuant to the contract, Contact was to produce dairy products at a United States government-owned plant in Japan. We affirm.
 
 DISCUSSION
 I.
 
 2
 The parties entered into the contract on September 20, 1989. The contract provided for a one-year base performance period, from October 1, 1989, to September 30, 1990, with four one-year options. On September 26, the incumbent contractor, Servrite International, Ltd. (Servrite), filed a bid protest with the General Accounting Office (GAO), challenging the award to Contact. Servrite requested that performance of the new contract be stayed pending a decision on the merits of the protest, but the Air Force determined that the products covered by the contract were urgently needed and allowed Contact to continue performance.[1]
 
 
 3
 On November 29, 1989, the Air Force sent GAO a memorandum in which it stated that it was sustaining Servrite's protest. The Air Force informed GAO that, in view of certain discussions which had taken place between the contracting officer and Servrite prior to contract award, it was unable to determine "whether award was made to the offeror whose proposal would have been most advantageous to the Government." The Air Force advised GAO that it would be reopening discussions with Servrite and Contact, the only two offerors, and that it would be requesting the submission of best and final offers. Upon completion of that process, the Air Force wrote, the contract would be awarded "to the offeror whose proposal is most advantageous to the Government consistent with the solicitation's evaluation criteria." In view of the proposed resolution of the dispute, GAO denied Servrite's protest on January 4, 1990.
 
 
 4
 Citing the November 29 memorandum, the contracting officer informed Contact, by letter dated December 21, 1989, that an amended request for proposals (RFP) would be issued on or about January 20, 1990, and that the resulting contract would begin on July 1. Contact challenged this decision in a protest filed with the Air Force on January 5; the Air Force denied the protest on January 19.[2] On February 5, Contact lodged a further protest with GAO, in which Servrite intervened. GAO denied the protest on May 17, stating that the Air Force's proposed corrective action was "necessary in order to preserve the integrity of the competitive procurement system."
 
 
 5
 On June 7, 1990, the Air Force informed Contact that the amended RFP would issue on or about June 30 and that the new contract would begin on October 1. The amended solicitation issued on July 2, and Servrite was awarded the new contract on September 10. Contact's contract ended by its terms on September 30, 1990, with the Air Force not exercising any of the option years.
 
 
 6
 On September 27, 1991, Contact submitted a claim to the contracting officer for an equitable adjustment under the contract. Contact also sought to recover damages for breach of contract, on the ground that the Air Force had breached the contract by improperly terminating it. Contact sought to recover (i) costs for inventory which was lost due to the alleged early termination of the contract; (ii) costs arising as a result of the Air Force's failure to make orders within certain estimated volume requirements; (iii) the cost of repairing certain machinery; (iv) non-recurring costs and depreciation; (v) costs relating to pay and fringe benefits for a plant manager; and (vi) profit. After the contracting officer denied the claim, Contact appealed to the Board. The Board sustained the appeal to the extent of the cost of repairing the machinery and costs arising as a result of the Air Force's failure to make orders within estimated volume requirements. In all other respects, the Board affirmed the contracting officer's final decision and denied Contact's appeal.
 
 II.
 
 7
 We review the Board's decision under the standards set forth in the Contract Disputes Act, 41 U.S.C. §§ 601-613 (1994). Under the statute:
 
 
 8
 the decision of the agency board on any question of law shall not be final or conclusive, but the decision on any question of fact shall be final and conclusive and shall not be set aside unless the decision is fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence.
 
 
 9
 41 U.S.C. § 609(b). The Board's conclusions of law are not final or conclusive and are reviewed de novo. See Fruin-Colnon Corp. v. United States, 912 F.2d 1426, 1429 (Fed.Cir.1990). Our review of the Board's findings of fact is limited to a determination of whether the findings are arbitrary, capricious, based upon less than substantial evidence, or rendered in bad faith. Roseburg Lumber Co. v. Madigan, 978 F.2d 660, 665 (Fed.Cir.1992).
 
 
 10
 On appeal, Contact does not challenge the Board's findings of fact. Instead, it argues that the Air Force's actions following award of the contract: (i) amounted to a constructive termination for convenience; (ii) caused a cardinal change, and thus a breach of contract; and (iii) amounted to a constructive change. For the reasons set forth below, we conclude that none of these contentions has merit.
 
 A.
 
 11
 Contact argues that a constructive termination for convenience occurred based upon the Air Force's actions beginning in November of 1989. According to Contact, even though no formal notice of termination for convenience was issued, the Air Force repudiated its commitment to perform for at least one year when it told Contact that it would issue an amended RFP and seek best and final offers and that a new contract would begin in July of 1990. Contact asserts that it thus found itself in a situation in which it anticipated prompt termination of the contract. Therefore, Contact reasons, a constructive termination for convenience occurred.
 
 
 12
 We disagree. To begin with, as we stated in Maxima Corp. v. United States, 847 F.2d 1549 (Fed.Cir.1988), "no decision has upheld retroactive application of a termination for convenience clause to a contract that had been fully performed in accordance with its terms." Maxima Corp., 847 F.2d at 1557. Here, Contact completed contract performance. Moreover, acceptance of Contact's argument would mean that every time any uncertainty was injected into a contract, the government would be potentially liable to the contractor based upon a theory of constructive termination for convenience. The uncertainty which arose in this case resulted from the events which took place during the evaluation of Servrite's and Contact's original offers and from the protests to the Air Force and GAO which ensued. Thus, the Air Force attempted to ensure that proper acquisition procedures were followed, while both Servrite and Contact exercised their bid protest rights. These factors all created the possibility that Contact's contract would have to be terminated. Furthermore, the protests initiated by Contact and Servrite in January and February of 1990 served to delay issuance of the amended RFP. We do not believe that uncertainty caused by anticipation that contract termination may occur sometime in the future constitutes grounds sufficient to hold the government liable for a constructive termination for convenience. In short, even if we were prepared, as a general proposition, to accept the concept of constructive termination for convenience, we would not apply it in this case.
 
 B.
 
 13
 Contact's argument that a cardinal change occurred is premised upon the contention that the actions of the Air Force--in particular informing Contact that an amended RFP would be issued--changed the essential nature of the bargain between the parties. The contract was placed "in limbo," Contact asserts, because the arrangement between the parties was changed from a one year contract, with four one-year options, to a contract without any fixed term. Contact argues that "[t]his constituted a cardinal change to [the] contract as of November 1989 ... both because it made the duration of the contract uncertain and eliminated the opportunity for an extension of the contract through the exercise of options."
 
 
 14
 Again, we disagree. A cardinal change occurs when "the government effects an alteration in the work so drastic that it effectively requires the contractor to perform duties materially different from those originally bargained for." Allied Materials & Equipment Co. v. United States, 569 F.2d 562, 563-64 (Ct.Cl.1978); see Edward R. Marden Corp. v. United States, 442 F.2d 364, 369 (Ct.Cl.1971). Cardinal changes are so drastic that they are not redressable under the provisions of the contract, and therefore constitute a breach of contract. Allied Materials, 569 F.2d at 564; Edward R. Marden, 442 F.2d at 369. In determining whether a cardinal change has occurred, a court must consider the totality of the change. Air-A-Plane Corp. v. United States, 408 F.2d 1030, 1033 (Ct.Cl.1969). " 'Each case must be analyzed on its own facts and in light of its own circumstances, giving just consideration to the magnitude and quality of the changes ordered and their cumulative effect upon the project as a whole.' " Id. (quoting Wunderlich Contracting Co. v. United States, 351 F.2d 956, 966 (Ct.Cl.1965)).
 
 
 15
 In this case, the question of whether there was any material change in expected duties must be analyzed with respect to the one year base period of performance, because the Air Force plainly was under no obligation to exercise the contract options. See Government Systems Advisors, Inc. v. United States, 847 F.2d 811, 813 (Fed.Cir.1988). Regarding the base year, any uncertainty that may have been injected into contract performance because of anticipation that the contract would be terminated for convenience did not lead to a material difference in Contact's actual performance compared to that originally contemplated under the contract. Contact performed duties similar to those required under the original contract, such as ordering supplies and maintaining inventory. We reject Contact's argument that the contract was materially changed because its duration became uncertain. As noted above, the uncertainity which arose here was the result of Servrite's original protest and the events which followed, including the later protests by Servrite and Contact. Acceptance of Contact's argument would mean that anytime the duration of a contract became uncertain as a result of a bid protest--a not unknown occurrence in the world of government contracts--the government could be potentially liable for a cardinal change. We do not believe that is the correct law. Moreover, in this case, while government conduct (the discussions between the contracting officer and Servrite prior to contract award) plainly led to the Servrite protest, we have difficulty concluding that the Air Force acted unreasonably after the contract was awarded to Contact and the protest was lodged. Under all of these circumstances, we are not prepared to hold that there was a cardinal change.
 
 C.
 
 16
 Contact's final argument is that the events following contract award resulted in a constructive change, entitling it to an equitable adjustment. Contact claims that a change occurred in November of 1989, when the Air Force decided to sustain Servrite's protest and to issue an amended RFP. Contact claims that another change occurred when the Air Force announced that a new contract would begin on July 1, 1990, but then later insisted that performance under the existing contract continue through September 30. Contact argues that the effect of these actions by the government was to make it impractical for it to enter into long-term commitments and to manage its performance in an orderly and cost-effective fashion.
 
 
 17
 Contact's arguments that a constructive change took place are not persuasive. A constructive change occurs when "a contractor performs work beyond the contract requirements, without a formal order under the changes clause, either by an informal order of the Government or by fault of the Government." Miller Elevator v. United States, 30 Fed. Cl. 662, 678 (Ct.Cl.1994). The Changes clause (August 1987) of the contract states in pertinent part as follows:
 
 
 18
 The Contracting Officer may at any time, by written order ... make changes within the general scope of this contract in any one or more of the following:
 
 
 19
 (2) [sic] Drawings, designs, or specifications when the supplies to be furnished are to be specially manufactured for the Government in accordance with the drawings, designs, or specifications.
 
 
 20
 (2) Method of shipment or packing.
 
 
 21
 (3) Place of delivery.
 
 
 22
 If any such change causes an increase or decrease in the cost of, or the time required for, performance of any part of the work under this contract, whether or not changed by the order, the Contracting Officer shall make an equitable adjustment in the contract price, the delivery schedule, or both, and shall modify the contract.
 
 
 23
 48 C.F.R. § 52.243-1 (1991).
 
 
 24
 The difficulty Contact faces in making its constructive change argument is that it can point to no additional or different work that it was forced to perform. Such additional or different work would have existed, for example, if the Air Force had instructed Contact to produce a different, more expensive, grade of milk than required under the contract. Moreover, as noted above in connection with the issue of constructive termination for convenience, the uncertainty which arose in this case resulted from the events which took place during the evaluation of Servrite's and Contact's original offers and from the protests which ensued. Thus, this case differs from C.H. Leavell & Co. v. United States, 530 F.2d 878 (Ct.Cl.1976), upon which Contact relies, where the court found that the government took actions for its own advantage and convenience which caused the contractor to incur extra expenses. See C.H. Leavell, 530 F.2d at 892-93.[3] We reject Contact's constructive change argument. For the foregoing reasons, the decision of the Board is affirmed.
 
 
 25
 No Costs.
 
 
 
 [1]
 Pursuant to 48 C.F.R. § 33.104(c)(2)(i), an agency may "authorize contract performance, notwithstanding the protest, upon a written finding that ... [c]ontract performance will be in the best interests of the United States...."
 
 
 [2]
 Servrite also filed a similar protest with the Air Force on January 13, 1990, but the Air Force rejected this protest as well in its January 19 decision
 
 
 [3]
 Contact's reliance on Hill Brothers Construction Co., ENG B CA No. 5685, 90-3 BCA p 23,276 (1990), and International Telephone and Telegraph v. United States, 453 F.2d 1283 (Ct.Cl.1972), also is misplaced. Hill Brothers involved a situation where work was stopped pursuant to a particular clause, which delayed the contractor's performance. The Board in Hill Brothers found that the government attempted to circumvent the clause. By contrast, in the present case, the government did not attempt to circumvent any contract provisions. In International Telephone and Telegraph, the Court of Claims found that the government failed to give timely notice that funds would be available for a coming year, and this failure amounted to a cancellation of the contract. International Telephone and Telegraph, 453 F.2d at 1293. Therefore, the court concluded, when the government required the contractor to perform at contract prices following the cancellation, this amounted to a constructive change. Id. In the present case, however, the government did not terminate Contact's contract, and further, it did not force Contact to perform after the contract ended by its terms on September 30, 1990