108 F.3d 1392
 41 Cont.Cas.Fed. (CCH) P 77,048
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
AMERTEX ENTERPRISES, LTD., Plaintiff-Appellant,
v.
The UNITED STATES, Defendant-Appellee.
 96-5070.
 United States Court of Appeals, Federal Circuit.
 Feb. 24, 1997.
Rehearing Denied; Suggestion for Rehearing In Banc Declined
May 2, 1997.
 
 Before NEWMAN, MICHEL and SCHALL, Circuit Judges.
 MICHEL, Circuit Judge.
 
 
 1
 Amertex Enterprises, Ltd. ("Amertex") appeals the consolidated, post-trial decision of December 15, 1995 of the Court of Federal Claims, Nos. 90-684, 91-1700, and 92-402, denying its claim for cardinal change breach of a contract, granting its claim for an equitable adjustment for delay caused by the United States ("government"), holding that the government's termination for default was justified, and offsetting the equitable adjustment with the amount of unliquidated progress payments due to the justified termination. The case was submitted for decision after oral argument on December 5, 1996. Because we agree with the trial court that Amertex waived its cardinal change claim by entering into bilateral modifications, and because the trial court did not reversibly err in its calculation of delay damages, or holding of justified default termination, we affirm.
 
 BACKGROUND
 
 2
 The detailed facts of the case are set out in the opinion of the Court of Federal Claims. Amertex Enterprises, Ltd. v. United States, Nos. 90-684 C, 91-1700, and 92-402 (Fed.Cl.1995). In brief, Amertex was awarded a government contract for the production of chemical warfare protective suits ("chemsuits") on February 25, 1985. A total of 2,415,885 chemsuits were to have been produced by December 29, 1986. In the words of the Court of Federal Claims, "[f]rom its inception, this procurement was plagued by poor decisions, mistakes, and miscommunication that delayed and disrupted Amertex's performance of its obligations." During the course of performance, the government issued 42 modifications and eight amendments to the contract, totaling over 100 changes to the specifications for the chemsuits. Also during the course of performance, and after many of these unilateral modifications and amendments, Amertex and the government entered into bilateral modifications of the contract which provided for a revised payment scheme and delivery schedule. The government eventually terminated the contract for default on January 6, 1989, over two years after the original deadline. Amertex had delivered fewer than half of the chemsuits it had agreed to deliver in the original contract.
 
 
 3
 Amertex submitted two claims to the Contracting Officer, one challenging the termination for default, and the second alleging a breach of the contract through cardinal change and seeking an equitable adjustment based on delay and disruption allegedly caused by the government. Both claims were denied, and Amertex filed suit in the United States Court of Federal Claims, which denied Amertex's cardinal change claim and default termination challenge, but granted in part its claim for an equitable adjustment. This appeal timely followed.
 
 DISCUSSION
 
 4
 Decisions of the Court of Federal Claims are subject to only limited review. Factual findings are reviewed for clear error, while legal conclusions are reviewed de novo. Alger v. United States, 741 F.2d 391, 393 (Fed.Cir.1984).
 
 I.
 
 5
 Amertex first appeals the holding that the series of changes that the government made to the contract did not constitute a cardinal change. This court reviews the holding of a cardinal change de novo. See, e.g., AT & T Communications, Inc. v. Wiltel, Inc., 1 F.3d 1201, 1207-08 (Fed.Cir.1993). A cardinal change:
 
 
 6
 occurs when the government effects an alteration in the work so drastic that it effectively requires the contractor to perform duties materially different from those bargained for. By definition, then a cardinal change is so profound that it is not redressable under the contract, and thus renders the government in breach.
 
 
 7
 AT & T Communications, 1 F.3d at 1205 (citing Allied Materials & Equip. Co. v. United States, 569 F.2d 562, 563-64 (Ct.Cl.1978)). As to Amertex's cardinal change claim, the Court of Federal Claims stated:
 
 
 8
 Notwithstanding the evidence supporting plaintiff's plausible and potentially convincing cardinal change assertion, plaintiff's position on this issue is fatally undercut by the bilateral modification made to the delivery schedule in 1988.
 
 
 9
 Although Amertex argues that, when presented with the bilateral modifications, it "could not ... walk away" from the contract, it has neither pleaded nor proven duress. The signed modifications evidence a meeting of the minds and, since the modifications changed both parties' obligations, are supported by consideration. Thus, the bilateral modifications are enforceable contracts which replace the parallel provisions of the original contract. As noted above, the bilateral modifications included modifications to the delivery schedule and the payment scheme. By agreeing to these modifications, Amertex implicitly agreed to a changed specification and added costs it accrued thereby. As stated by the Court of Federal Claims, "[i]n essence, Amertex promised to produce the modified chempro suit, with all changes which had been made to July 1988 and given the numerous other government-caused difficulties, on a schedule contemplating half the pace as the original contract." Moreover, by advancing payment due dates to delivery installment dates, Amertex bargained for and received an infusion of working capital that was needed in light of performance difficulties but that was not contemplated in the original payment scheme. Since Amertex agreed to the changes, it implicitly agreed that the changes were within the changes clause of the contract. There can only be a cardinal change if the government required Amertex to perform materially different duties from those bargained for in the contract as modified. Amertex does not so allege.
 
 
 10
 Amertex argues that Air-A-Plane Corp. v. United States, 408 F.2d 1030 (Ct.Cl.1969), suggests a different result. In Air-A-Plane, a plaintiff was allowed to pursue both an equitable adjustment through the Armed Forces Board of Contract Appeals ("ASBCA") and a cardinal change claim through the Court of Claims. In rejecting the government's argument that the plaintiff was estopped from pursuing its cardinal change claim by virtue of its equitable adjustment claim, the court stated:
 
 
 11
 This is an instance of an imposed election of remedies which seems to us unfair to contractors. One who was confident that Government modifications created a cardinal change, for which he could go to court at once, would still be well advised to pursue his administrative remedy under the Changes clause. If he failed to do so and the court decided that the alterations were not cardinal but within the clause, the contractor could well be left without any remedy at all--though it was clear that he was entitled to some compensation on one basis or the other.
 
 
 12
 Id. at 1034.
 
 
 13
 Amertex asserts that the instant situation is analogous--that it should not be required to decline to enter into the modification at the peril of losing its cardinal change claim.
 
 
 14
 We disagree with Amertex's reasoning. Air-A-Plane turned on the procedural limitations of the ASBCA at the time the case was brought. At that time, the ASBCA did not have jurisdiction to hear cardinal change claims. Id. Here, it was possible for Amertex to make both equitable adjustment and cardinal change claims in the same forum (as it did). Thus, there was no "imposed election of remedies" as criticized in Air-A-Plane. Although Amertex did need to decide whether to enter into the modifications or seek cardinal change breach remedies, this was a business choice, not mandated by jurisdictional statutes.
 
 II.
 
 15
 Since there was no cardinal change, Amertex is entitled only to an equitable adjustment for delay damages caused by the government. Amertex appeals the Court of Federal Claims' finding that the government was solely responsible for only 36% of the 952 days of delay in the contract. Delay must be apportioned solely to one party for damages to be awarded. Blinderman Constr. Co. v. United States, 695 F.2d 552, 559 (Fed.Cir.1982). Thus, Amertex cannot recover for any of the government's delay that is concurrent or intertwined with other delays. Commerce Int'l Co. v. United States, 338 F.2d 81, 90 (Ct.Cl.1964). The determination of delay causation is a question of fact. J.D. Hedin Constr. Co. v. United States, 347 F.2d 235, 245 (Ct.Cl.1965).
 
 
 16
 Amertex argues that the trial court misapplied Critical Path Methodology ("CPM") in calculating delay. CPM looks only to delay along the "critical path," that is, those parts of a project that, if delayed, delay the entire project, to determine allocation of delay. Delay in non-critical path components of the project, because it does not delay the completion of the entire project, does not result in allocation of delay. CPM has typically been used in construction contracts where the determination of those parts of the project on the critical path is straightforward. See, e.g., Haney v. United States, 676 F.2d 584, 595 (Ct.Cl.1982); G.M. Shupe, Inc. v. United States, 5 Cl.Ct. 662, 728 (1984); Sterling Millwrights, Inc. v. United States, 26 Cl.Ct. 49, 75 (1992).
 
 
 17
 The trial court here recognized that CPM is most useful in those contexts where the determination of the critical path is straightforward, but, nonetheless, was "unpersuaded that CPM is useless in the more complex manufacturing context." Although Amertex argues that the Court of Federal Claims incorrectly applied CPM, it does not argue, nor can it, that the court was even obligated to apply CPM, or any particular modification of CPM, for use in this manufacturing context.
 
 
 18
 We have carefully reviewed the Court of Federal Claims' detailed and thoughtful delay analysis. Although the analysis that the court did is certainly not the only conceivable method of analysis, and although there may be improvements that could have been made to the analysis (for instance, analysis of the causal effect of early government-caused delay on later Amertex-caused delay), we cannot hold that the analysis is clearly erroneous. Neither can we hold that the failure of the Court of Federal Claims to separately label disruption costs (costs caused by the government by creating more work for Amertex, not merely delaying Amertex's ability to perform) was clearly erroneous.
 
 III.
 
 19
 Finally, Amertex challenges the Court of Federal Claims' upholding of the default termination. The court held that the government met its burden of proof that Amertex's financial condition at the time of the default termination made it reasonably likely that the contractor would be unable to finish performance in the remaining time. See Lisbon Contractors, Inc. v. United States, 828 F.2d 759, 765 (Fed.Cir.1987). The court further held that Amertex did not have a valid defense of excuse because the poor financial condition of the company was not primarily caused by the acts or omissions of the government. See TGC Contracting Corp. v. United States, 736 F.2d 1512, 1515 (Fed.Cir.1984).
 
 
 20
 Amertex argues that the factual findings relied on by the Court of Federal Claims are in error. We have carefully considered Amertex's arguments and discern no clear error in the Court of Federal Claims' analysis. Based on these underlying facts, the court reached the correct legal conclusion that the default termination was justified.
 
 IV.
 
 21
 The Court of Federal Claims correctly held that the bilateral modifications are binding and therefore there was no cardinal change, and there was no clear error in the allocation of delay or default termination factual analysis. The decision of the Court of Federal Claims is therefore affirmed.
 
 
 22
 NEWMAN, Circuit Judge, dissenting.
 
 
 23
 I respectfully dissent, for the Court of Federal Claims applied incorrect law in holding that the contract modification of the payment and delivery schedules, three and a half years after commencement of the two-year contract, was a waiver by Amertex of any claim that the government had cardinally changed the contract. There was no waiver or release of such a claim, at any time.
 
 
 24
 The Court of Federal Claims made many findings relevant to the extent of the changes in the design specifications, and how these changes affected Amertex's performance. The court found as fact that the design was new and untested, that the specifications were inadequate or incorrect, and that the contract was not performable in accordance with its terms. The court concluded that "The fixed price contract became, in part, a research and development contract." However, following this exposition, the court found as follows:
 
 
 25
 The unreasonable rejection of the second First Articles and the other unreasonable acts by the government which undermined this project hampered mass production and, arguably, fundamentally changed the nature of this contract.
 
 
 26
 Notwithstanding the evidence supporting plaintiff's plausible and potentially convincing cardinal change assertion, plaintiff's position on this issue is fatally undercut by the bilateral modifications made to the delivery schedule in 1988.
 
 
 27
 Thus although the Court of Federal Claims found that the claim of cardinal change was "plausible and potentially convincing," the court apparently inferred either release or waiver. That conclusion is incorrect, for the modification to the delivery schedule did not release or waive this claim, which related not to delivery, but to all of the contract changes. So substantive and financially significant a change in the contractor's rights can not be inferred from a contract modification that is silent on the matter of release of claims. See Laka Tool & Stamping Co. v. United States, 639 F.2d 738, 743 (Ct.Cl.1980) (contractor did not waive claim for equitable adjustment when contract modification did not contain an express waiver of the claim), cert. denied, 454 U.S. 1086 (1981).
 
 
 28
 The modification simply extended the delivery dates of the now delayed product, and provided for payment based on deliveries. It neither expressly nor by implication withdrew from the contractor the legal right to recover on an otherwise valid claim that the contract had been cardinally changed.
 
 
 29
 The panel majority offers the theory that since Amertex did not allege duress in accepting the contract modification, it can not argue that it did not waive its claim. Duress, alleged or not, is not at issue. The contractor was not required to walk away from the contract instead of entering into the modified delivery and payment terms, in order to preserve a claim for cardinal change.
 
 
 30
 "Under established case law, a cardinal change is a breach. It occurs when the government effects an alteration in the work so drastic that it effectively requires the contractor to perform duties materially different from those bargained for. By definition, then a cardinal change is so profound that it is not redressable under the contract, and renders the government in breach."
 
 
 31
 AT & T Communications, Inc. v. Wiltel, Inc., 1 F.3d 1201, 1205 (Fed.Cir.1993) (quoting Allied Materials & Equip. Co. v. United States, 569 F.2d 562, 563-64 (Ct.Cl.1978)).
 
 
 32
 Cardinal change relates to changes in the entire contract, with all of its modifications. Atlantic Dry Dock Corp. v. United States, 773 F.Supp. 335, 339-40 (M.D.Fla.1991):
 
 
 33
 [D]etermining the merits of a cardinal change claim requires an examination of the totality of the circumstances surrounding the project and the many modifications.... These facts cannot be known until the project is completed or nearly completed.
 
 
 34
 Indeed, had Amertex walked away from the contract, such an action could have speeded Amertex's financial demise, for progress payments were being retained. A business decision to continue to perform does not waive a contractor's recourse to remedy on a theory of cardinal change. Cities Service Helex, Inc. v. United States, 543 F.2d 1306, 1313 (Ct.Cl.1976):
 
 
 35
 A material breach does not automatically and ipso facto end a contract. It merely gives the injured party the right to end the agreement; the injured party can choose between canceling the contract and continuing it.
 
 
 36
 See Allied Materials, 569 F.2d at 564 ("Undoubtedly, the cautious contractor might often proceed under the revised contract because of doubt whether he could invoke the cardinal change doctrine.")
 
 
 37
 The Court of Federal Claims did not make a final finding on the issue of cardinal change, instead holding that any claim on this ground was waived. The panel majority has ratified this error by requiring duress while ignoring the absence of either waiver or release. It is irrelevant whether there were hard economic decisions made by Amertex; the question of law is whether there was a waiver or release of this claim, and there plainly was not. The decision of the Court of Federal Claims, since based on incorrect law, should be vacated, and the matter returned to the trial court for final determination of the issue of cardinal change.