IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 6, 2008 Session

# TOTAL BUILDING MAINTENANCE, INC., v. J & J CONTRACTORS/RAINES BROTHERS, a Joint Venture, J & J CONTRACTORS, IN., RAINES BROTHERS, INC., ST. PAUL FIRE & MARINE INSURANCE COMPANY, and FIDELITY & DEPOSIT CO. OF MARYLAND

**Direct Appeal from the Chancery Court for Hamilton County**
**No.  06-0227      Hon. W. Frank Brown, III, Chancellor**

**No. E2008-00678-COA-R3-CV  - FILED MARCH 13, 2009**

In this action plaintiff sued for money owed under its subcontract with the defendant contractor.  The defendants' contractor denied liability,  raised as affirmative defenses, waiver/estoppel, unclean hands and breach of contract, filed a counter-claim alleging that plaintiff failed to complete its work in a timely and proper manner and permitted the roof to be harmed by others during the construction and generally failed to cooperate.  Following an evidentiary hearing, the Trial Judge determined that both parties had breached the contract, that plaintiff was guilty of unclean hands, denied both parties any recovery and dismissed the case.  On appeal, we affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

Timothy M. Gibbons, Chattanooga, Tennessee, for appellant.

Randy Wilson and Robert F. Parsley, Chattanooga, Tennessee, for appellees.

**OPINION**

Plaintiff in this action alleged that it was owed money for work performed on the new headquarters for the Electric Power Board in Chattanooga. Further, that defendants J&J Contractors and Raines Brothers, Inc., (hereinafter "contractor") formed a joint venture to act as general contractor for the construction project, and that unnamed defendants were the performance bond sureties.

Plaintiff averred that it entered into two contracts with contractor to work as a roofing subcontractor on this project, and attached copies of the subcontract agreements and alleged that it had a number of disputes with contractor regarding the fact that contractor sought to hold plaintiff liable for damage caused by other parties to the work performed by plaintiff.

Plaintiff charged that contractor also tried to increase the scope of the work, and refused to execute change orders for the additional work. Plaintiff asserted that it had completed all of the work, but had not been fully paid, and was owed $193,000.00, because contractor had breached the contract, interfered with the contract and breached covenants of good faith and fair dealing.

Plaintiff later amended its Complaint to add St. Paul Fire & Marine Insurance Company and Fidelity & Deposit Company of Maryland, as sureties on the bonds.

Defendants answered, denying any liability, pleading waiver/estoppel, unclean hands, breach of contract, comparative fault, laches, insufficiency of process, etc. Defendants also filed a Counterclaim asserting that plaintiff had failed to complete its work in a timely and proper manner, failed to insure that the roof was inspected by a representative of the manufacturer to obtain a warranty, permitted the roof to be harmed by others during construction, and withheld necessary lien releases. Defendants attached an Interim Agreement which the parties had executed.

Plaintiff filed a Reply to Counterclaim, denying it had breached any of its responsibilities, and the case went to trial before the Trial Judge on November 27-30, 2007.

The Trial Court filed a Memorandum Opinion, and found that plaintiff was the roofing subcontractor on the new EPB office building in downtown Chattanooga, and that the defendant joint venture was the general contractor on the project. The Court found that the parties and the architect all agreed the roof installation began too early, and that the contractor was in charge of scheduling the work, and did ask plaintiff to install the roof earlier than normal, but that the contractor contended that plaintiff was supposed to protect its work. The Court said that other parties were still working in the roof area, and that the roof was damaged by water, and part of it had to be replaced. The Court found that the roofing manufacturer, Garland Company, would not warranty the roof until a second cap sheet was installed over the initial one, and that plaintiff claimed defendants owed them for this installation. The Court found that plaintiff also claimed to be owed for all the repair work to the roof.

The Court found that Marvin Cornelison, president of Raines Brothers, testified that everyone had responsibility for damaging the roof, and the company that caused the most damage was Staley Marble & Granite, Inc., the subcontractor. The Court found the contractor withheld $32,328.00 from Staley's final payment to cover roof damages, and that the contractor explained in a letter to Staley that this was 20% of the amount invoiced for repairs by plaintiff ($161,638.00), because the contractor assessed that Staley was responsible for 20% of the roof damage. The Court found there was no evidence that any other sub was back-charged for roof damage, and there were pictures in evidence of other subs working on the roof, which could have caused damage.

The Court found that the evidence was clear that plaintiff had to share in the blame for part of the roof damage, as there was proof that it had failed to properly install an ice and water shield in one area, and water damage resulted, and there was also proof of improperly installed flashing, as well as damage caused by improper precautions by plaintiff's employees, and that plaintiff was largely responsible for the repair work needed on the roof.

The Court found the contractor agreed to pay plaintiff for certain repair work, and asked plaintiff to identify its costs associated with the same, by providing invoices, time cards, etc., but that plaintiff never complied with this request until late in the discovery process, and did not provide a breakdown regarding which invoices were related to which work. The Court held that regarding the second cap sheet, plaintiff provided a quote for the work of $86,779.00, but the contractor got a quote from another for $47,000.00 for the same work. The Court found that plaintiff was directed to do the work pursuant to the subcontract, and to keep detailed cost records on the work, but plaintiff failed in this regard. The Court said the plaintiff was repeatedly asked by the contractor to itemize its expenses related to the second cap sheet, and the contractor referenced the contract requirements (found in the Supplementary Conditions) regarding financial information needed to consider a change order. The Court held that plaintiff never provided actual cost information, although it did provide a couple of estimates.

The Court observed that the plaintiff's credibility was damaged by the changing nature of its position regarding the actual costs associated with the second cap sheet, and that plaintiff's invoices appeared to be "padded", e.g., the repair associated with one balcony roof was billed to the contractor three different times.

The Court observed that plaintiff's claim was primarily based upon the testimony of Mr. Whitmore, and his credibility was damaged in several ways, and set forth examples.

The Court determined that it would deny recovery to plaintiff because Whitmore admitted that plaintiff received formal, written change orders for some extra work, and that it was paid for that work; plaintiff did not receive change orders for the disputed repair work nor the second cap sheet, and should not have performed the work without change orders. The Court found that regarding the second cap sheet, plaintiff was told to keep detailed cost records, but did not, and plaintiff could not prove the actual costs with regard to any specific work, and could not explain billing discrepancies. Plaintiff admitted responsibility for failing to protect the field laps on the

balconies, but did not deduct for the repairs to the same, and failed to produce documentation for a long period of time, and as a result was guilty of unclean hands. Finally, the Court found that plaintiff was seeking quantum meruit recovery, and quantum meruit recovery should not be based on the value of the services of the one performing the same, but should instead be based on the value of the benefit conferred. The Court held there was no proof of the benefit conferred on the contractor by the repair work or the extra cap sheet. Moreover, plaintiff failed to adequately prove the value of its services.

The Court also denied the contractor's counterclaim, finding that it had failed to prove that plaintiff was contractually liable. Regarding attorney's fees, the Court found that plaintiff was not entitled to an award of attorney's fees, because most of the time spent on the case was due to plaintiff's unwillingness to accept responsibility for any damage to the roof, and its unwillingness to produce its actual costs relating to the work. The Court also denied the contractor's claim for attorney's fees, and ordered that the contractor pay plaintiff the balance due on the adjusted contract price upon plaintiff's satisfactory completion of the punch list and receipt of the warranty, but dismissed the remainder of plaintiff's claims with prejudice.

Both parties filed Motions to Alter or Amend the Judgment, and the Trial Court found that considering the "big picture", plaintiff was guilty of unclean hands, and thus should be denied all relief.

Regarding the contractor's motion, the Court also denied recovery because the Court found that the roof was begun too early, and further found the contractor also bore some responsibility in protecting the roof work. The Court reaffirmed its denial of attorney fees to the contractor, finding that both parties breached their agreement, concluding that both parties should be left where they are.

Numerous issues have been presented on appeal, as follows:

1. Whether the Trial Court erred by applying the wrong legal standard in analyzing extra-contractual work by requiring clear and convincing proof?

2. Whether the Trial Court erred in misapplying the legal standards generally applicable to quantum meruit claims by requiring actual payment by the owner to the contractor for extra work performed by TBM?

3. Whether the Trial Court erred in applying contract terms assuming a change directive or a change order, neither of which existed and for which defendants presented no proof?

4. Whether the Trial Court erred in ruling cost information was withheld instead of acknowledging that counsel were in agreement on the production of documents?

5.      Whether the Trial Court ignored the extensive proof on costs and the time line of the project?

6.      Whether the Court's factual analysis is contrary to the manifest weight of the evidence?

7.      Whether the Court erred in focusing on a conversation not taken seriously by any party and elevating it to one of the Court's key findings?

8.      Whether the Trial Court erred by failing to rule on TBM's entitlement to relief based on the theory of cardinal change?

9.      Whether the Court erred in failing to grant TBM a new trial?

10.     Whether the Trial Court properly denied defendants' claim for attorneys fees, and whether they are entitled to recover fees and costs on appeal?

Plaintiff argues that the Trial Court applied the wrong standard in analyzing its quantum meruit claim, as the Trial Court required the claim to be proven by clear and convincing evidence. What the Trial Court actually said, however, was that damages needed to be proven by showing "actual documented expenses", not that it was requiring clear and convincing evidence. The Trial Court explained that, even if plaintiff's claims were not barred by its unclean hands, plaintiff did not prove its damages in quantum meruit because there was no adequate proof of the benefit conferred on the contractor, nor plaintiff's actual costs. There is no adequate proof of the value of plaintiff's services. The records/invoices supplied are ambiguous, contradictory, and difficult to decipher. The evidence does not preponderate against the Trial Judge's determination. Tenn. R. App. P. 13(d).

Plaintiff further argues that the Trial Court erred in requiring it to show the benefit conferred by showing actual payment to the contractor by the owner for the extra work performed by plaintiff. Plaintiff again mischaracterizes the Trial Court's opinion. The Court explained that, in Tennessee, an award in quantum meruit is based on the value of the benefit conferred rather than the value of the services to the one performing the services. Citing *Parris Roofing & Sheetmetal Co. v. SCR Electric, Inc.*, 2007 WL 596396 (Tenn. Ct. App. Feb. 27, 2007). The Court then noted the fact that the owner did not pay the contractor any additional money as a result of the "extra" work. Moreover, plaintiff had not shown any proof of what its services were worth, thus resulting in the Court's conclusion that there was no proof of a benefit conferred.

In any event, plaintiff's arguments regarding quantum meruit are largely moot given the Trial Court's finding that plaintiff was guilty of unclean hands. Quantum meruit is an equitable remedy, and requires that a party seeking to rely upon it must be able to "overcome the equitable 'lack of clean hands' defense." *Castelli v. Lien*, 910 S.W.2d 420 (Tenn. Ct. App. 1995). *Also see, Hogue v. Kroger Co.*, 373 S.W.2d 714, 716 (Tenn. 1963).

Next, plaintiff argues the Trial Court erred in quoting provisions of the contract that deal with change directives/change orders, when there was no change directive/order applicable to this work. Plaintiff cites to pages in the record, wherein the Trial Court does generally discuss the requirements for a change order, etc., but the Trial Court did not find that a change order was issued. In fact, the Trial Court found that a change order was not issued for the work (as had been done for other "extra" work in the parties' prior dealings) and this should have been a red flag to plaintiff not to continue with the work until an understanding was reached. The Court analogized the documentation required for a change order to that which was requested by the contractor for the extra work, and pointed out that plaintiff was specifically asked to keep records of its actual costs related to the second cap sheet, but failed to do so. The Court further observed that if plaintiff expected to be paid for the work, it should have expected to have to substantiate its costs involved, but failed to do so either before or during trial. There is no error in the Trial Court's analysis.

Next, plaintiff argues the Trial Court erred in finding that cost information was withheld, rather than acknowledging that counsel had agreed on a certain date for the production of documents. Plaintiff argues it should not be penalized for the time it took to provide the documents in discovery, as it is undisputed that the documents were provided on a date agreed upon by the attorneys for a mutual document exchange.

What the Trial Court found, however, was that backup cost documentation was repeatedly requested by the contractor, and was never provided in an effort to substantiate plaintiff's expenses in doing this work, which, theoretically, could have provided a basis for resolution of these issues without going to court. The contractor presented numerous letters and emails requesting this documentation, but it was undisputed that this was never provided before discovery in this case. While it appears that the document exchange was handled in a timely fashion once the case reached the discovery phase, this does not change the fact that the documents clearly could have been provided sooner, as requested by the contractor in an effort to determine if plaintiff could be paid for its work. Plaintiff's failure to cooperate only lengthened the process and strengthened the animosity between the parties, as the Trial Court found. The fact that the discovery process was handled on schedule does not excuse the fact that plaintiff could have provided the information sooner if it had so elected. The evidence does not preponderate against the Trial Court's finding. Tenn. R. App. P. 13(d).

Plaintiff also takes issue with other specific factual findings of the trial court, arguing that the Court ignored the extensive proof of actual costs contained in the Final Report, that the Court ignored the undisputed proof that everyone bore responsibility for damage to the roof, and that the Trial Court erred in its assessment of Whitmore's credibility on several levels. We conclude the Trial Court's opinion is detailed and specific, and is supported by the record.

In addressing the specific issues raised by plaintiff, it is clear that the Find Report does contain cost information, and the Trial Court noted the same. However, a few of the Trial Court's problems with the report were that it was not provided in a timely and cooperative fashion until discovery, and it did not specifically track costs relating to the second cap sheet even though

this was expressly requested by the contractor, and could have been done according to plaintiff's office manager. Further, as stated earlier, the cost information provided in general was confusing, duplicitive, and contradictory, and the Trial Court stated that it did not feel that it could adequately assess any measure of damages based on the proof even without the unclean hands issue. The evidence does not preponderate against the Trial Court's factual findings. Tenn R. App. P. 13(d).

As to the damage to the roof, the testimony showed that everyone involved bore some responsibility, which the Trial Court found. The Trial Court relied upon this fact in basically holding that the most equitable resolution in this situation was to leave the parties where they were, because each party had liability and responsibility for the damage, as mistakes were made by both parties.

Finally, regarding credibility, the parties agree that the Trial Court is the best judge of witness credibility, and that the Trial Court's determination regarding same can be re-evaluated if there is clear and convincing evidence to the contrary. *See Bingham v. Dyersburg Fabrics, Co., Inc.*, 567 S.W.2d 169, 170 (Tenn. 1978). In this case, the record supports the Trial Court's findings regarding Mr. Whitmore's credibility, as his testimony was contradictory, confusing, and argumentative at times. The testimony regarding his comment about "padding" the bill was stated to be in jest, and the Trial Court merely commented that some of the plaintiff's invoices did, in fact, appear to be "padded". The Trial Court observed the witness and heard his testimony, and is the best judge of his credibility. There is no clear and convincing evidence that the Trial Court erred in its determination. We conclude the record in this case supports the factual findings made by the Trial Court, and we affirm the Trial Judge on these issues. Tenn. R. App. P. 13(d).

As an additional issue, plaintiff argues the Trial Court should have awarded it relief pursuant to the theory of "cardinal change", which it argues is applicable to construction contracts, and which allows the contractor to recover its costs, overhead, and profit when it is required to perform work outside its reasonable expectation at the time the contract was executed. Plaintiff acknowledges this doctrine has not been adopted by Tennessee courts.

We conclude this is clearly not a case for the adoption/application of the cardinal change doctrine, which requires a showing that there is an "alteration in the work so drastic that it effectively requires the contractor to perform duties materially different from those originally bargained for." *Allied Materials & Equip. Co., Inc. v. United States*, 569 F.2d 562, 563 (Ct. Cl. 1978). The change must be so profound that it would constitute a breach of the original contract, and causes damage that is not redressable by the contract. *Global Engineering & Const., LLC v. Merchants Bonding Co.*, 2007 WL 1752463 (S.D. Ga. June 15, 2007). No profound change in this contract has been shown. Moreover, since this is an equitable remedy akin to quantum meruit, it would also be barred by plaintiff's unclean hands.

Plaintiff also argues the Trial Court erred in failing to grant it a new trial, because it was entitled to a new trial based on the Trial Court's "serious errors" in refusing to credit certain testimony and overlooking material evidence. These issues have been addressed, and we have found that the record supports the Trial Court's factual findings and legal conclusions. There is no basis

for the granting of a new trial.

Defendants argue the Trial Court erred in failing to award them any attorney's fees in this case, because plaintiff was shown to have breached the contract, to have unclean hands, etc. What the Trial Court found, however, was that both parties breached their agreement, and thus concluded that both parties should be left where they are. It appears that, based upon the evidence in this case, this was the most equitable resolution where it was shown that both parties bore responsibility for the problems leading up to the lawsuit, and both parties were technically in breach. The proof showed that the contractor directed the work on the roof to begin too early in construction, and the contractor also bore responsibility for failing to protect the roof.

The contractor argues, however, that it should be awarded fees based on the contract provisions contained in either the Interim Agreement or the Subcontract itself. The Interim Agreement specifically provides that fees can be awarded from the "breaching" party to the "non-breaching" party, but since the Trial Court found breach on both sides, this is not applicable. The Subcontract, however, does not contain such language regarding a "breaching" party, rather, it simply states that if the contractor commences any action relating to the Subcontract or the subcontractor's work, then the subcontractor is to reimburse the contractor for "all costs and expenses of such legal action, arbitration or other proceeding, including reasonable attorneys' fees." While the Trial Court found the contractor's counterclaims against plaintiff would constitute the commencement of an action, the Court denied attorney's fees, finding that both parties were in breach, as stated above. The Trial Court also found that the contractor might have a windfall of $47,000.00 based on Helton's estimate of the cost of the second cap sheet, and took into consideration the potential "windfall" in denying the claim. We affirm the Trial Court's judgment in denying attorney's fees to the defendants, because under the familiar rule contracts are enforceable in accordance with equity and good conscience. *Greene County Bank v. Southeastern Properties, Inc., et al.,* 1996 WL 471469 (Tenn. Ct. App. Aug. 21, 1996); *CGR Investments, Inc., v. Hackney Petroleum, Inc.,* 2000 WL 1285246 (Tenn. Ct. App. Sept. 12, 2000); and *Brown v. McCord, et al.,* No. 03A01-9509-CH-00329 (Ct. App. issued Jan. 30, 1996).

We affirm the Judgment of the Trial Court and remand, with one-half of the costs assessed to the plaintiff and one-half assessed to defendants.

_____
HERSCHEL PICKENS FRANKS, P.J.