**EDWARD R. MARDEN CORPORATION**

v.

**The UNITED STATES.**

No. 154–70.

United States Court of Claims.

May 14, 1971.

David V. Anthony, Washington, D. C., for plaintiff; Gilbert A. Cuneo, Washington, D. C., attorney of record. Maurice F. Ellison, Harvey G. Sherzer, and Sellers, Conner & Cuneo, Washington, D. C., of counsel.

Edward M. Jerum, Washington, D. C., with whom was Asst. Atty. Gen. L. Patrick Gray, III, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

## ON DEFENDANT'S REQUEST FOR REVIEW OF COMISSIONER'S ORDER

COLLINS, Judge.

This Government contract case is presently in its *"Utah"* [1] stage. A judicial determination on the merits of this case is being held in abeyance while plaintiff and defendant go through the ritual of asserting and denying, respectively, plaintiff's entitlement to a de novo trial in this court. The case is before the court on defendant's request for review of the trial commissioner's order granting plaintiff's motion for a de novo trial of the issues relating to Count II of plaintiff's petition.

The background facts summarized solely for present purposes, are as follows: Plaintiff was the successful bidder on a Navy contract to demolish an existing hangar, erect a new TACAN building, construct new and alter existing lean-tos, and construct a new aircraft maintenance hangar at the Naval Air Station, South Weymouth, Massachusetts. The contract was of the fixed-price variety and was in the amount of approximately $2,000,000. The present litigation arises from the construction of the hangar.

According to contract specifications, the new hangar was to be framed with 12 precast concrete arches, each weighing over 100 tons. Each arch was to be hinged to two reinforced concrete buttresses which would rest on concrete footings and be joined by a steel tie rod.

During the erection of the fourth arch the entire structure collapsed, causing the death of two men, serious injury to others, and substantial damage to equipment and work already completed. The parties are in apparent agreement that the collapse was immediately caused by the fact that plaintiff erected and released the arches to rest on the buttresses before the tie rods had been installed and without shoring the buttresses to relieve the horizontal pressure exerted by the arches.

The contracting officer determined that the structure collapsed due to faulty construction methods on the plaintiff's part and that plaintiff remained responsible for furnishing a completed hangar satisfying contract requirements. Plaintiff took a timely appeal from the contracting officer's final decision to the Armed Services Board of Contract Appeals (hereinafter board).

In its opinion, the board summarized the four grounds upon which plaintiff

[1]. United States v. Utah Constr. & Mining Co., 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966).

argued that it should be relieved of responsibility for the collapse:

(1) The contract did not indicate that the weight of the arches had to be restrained either by tie rods or by temporary vertical support until the tie rods were installed.

(2) Appellant was misled, on what has become the critical point of the erection procedure, i. e., the timing of the tie rod installation, by Dr. Traum, who was one of the design engineers.

(3) When the design engineers approved certain of appellant's proposed erection procedures, such approval reasonably included approval of the critical point referred to above.

(4) The Government was negligent in not using field tests for assigning safe bearing values to the soils.

Edward R. Marden Corp., 69–2 BCA ¶ 7878, at 36,617 (ASBCA 1969). In a lengthy opinion the board rejected all of plaintiff's contentions and held that plaintiff "has not established any valid ground for being relieved of its normal builder's risk liability for damage to the building occuring [*sic*] before its completion and final acceptance." *Id.* at 36,-646. The board's decision was founded on the standard Permits and Responsibilities clause which contains the normal rule as to "builder's risk":

\* \* \* [The Contractor] shall also be responsible for all materials delivered and work performed until completion and acceptance of the entire construction work, except for any completed unit of construction thereof which theretofore may have been accepted.

Plaintiff's petition in this court is in two counts. Count I seeks review of the board's decision on the usual grounds. It is a claim for an equitable adjustment under the Changes clause grounded on the theory that the contract specifications for construction of the hangar were defective. Count I alleges that the design of the hangar was both new and unusual; that the specifications did not state that the tie rods were structural supporting members of the hangar or that they were to be installed at any particular point in construction; that plaintiff's erection procedure was approved in advance by the Government; and that the Government's designer, when called to examine outward movement of the buttresses supporting the first erected arch, informed plaintiff that the movement was expected and that there was no cause for concern. It is also alleged that following the collapse plaintiff, under protest, cleaned up the debris and reconstructed the hangar as directed by the Government.

Count II is a claim for breach of contract. It incorporates by reference all of the basic factual allegations of Count I and further alleges that the collapse of the partially constructed hangar was the result of the Government's failure to advise plaintiff of the Government's "superior knowledge that the steel tie rods were structural members and that their installation prior to erection of the arches was essential to safe construction." The theory of Count II, failure of defendant to disclose "superior knowledge," is known to this court as an acceptable basis for an action for breach of contract. *See, e. g.,* Helene Curtis Indus., Inc. v. United States, 312 F.2d 774, 160 Ct.Cl. 437 (1963).

Plaintiff's motion for a trial de novo on Count II, on the ground that the claim stated therein "is not redressable under or adjustable by any clause of the contract," was granted by our trial commissioner. We are asked by the defendant to review the commissioner's order.

As we view this case, in its present posture, there are two issues which must be resolved: (1) whether the claim in plaintiff's Count II is redressable under the Permits and Responsibilities clause; and (2) assuming the answer to the first question is negative, whether plaintiff's motion for a trial de novo on Count II must be denied on the basis of L. W. Foster Sportswear Co. v. United States, 405 F.2d 1285, 186 Ct.Cl. 499 (1969).

**I**

█ █ It is a familiar principle in the law of Government contracts that, to the

extent complete relief is available under a specific provision of the contract, a controversy is regarded as being within the standard Disputes clause,[2] *i. e.*, as arising "under the contract." Such a controversy is susceptible of initial administrative resolution under the Disputes clause, and the administrative decision is subject to judicial review under the standards of the Wunderlich Act, 41 U.S.C. §§ 321, 322 (1964). Judicial review is strictly limited to the record established in the administrative proceedings. United States v. Carlo Bianchi & Co., 373 U.S. 709, 714, 83 S.Ct. 1409, 10 L.Ed.2d 652 (1963). A corollary principle is that, to the extent complete relief is not made available under a specific contract provision, a controversy is not subject to administrative determination via the Disputes clause and may be tried de novo in the proper court. Len Co. & Assoc. v. United States, 385 F.2d 438, 442, 181 Ct.Cl. 29, 36 (1967). The Government contends in this case that the claim plaintiff asserts in Count II is redressable under the Permits and Responsibilities clause.

Our primary guide in resolving this issue is the Supreme Court's decision in United States v. Utah Constr. & Mining Co., *supra* note 1. In *Utah* the Govern-

ment argued that "the disputes clause is not limited to those disputes arising under other provisions of the contract— Articles 3, 4 and 9 in this case—that contemplate equitable adjustment in price and time upon the occurrence of the specified contingencies." 384 U.S. at 404, 86 S.Ct. at 1551. The Court did not accept this view, however:

> We must reject the government position, as did all the judges in the Court of Claims. The power of the administrative tribunal to make final and conclusive findings on factual issues rests on the contract, more specifically on the disputes clause contained in Article 15. * * * [A]nd the short of the matter is that when the parties signed this contract in 1953, neither could have understood that the disputes clause extended to breach of contract claims not redressable under other clauses of the contract.[6] * * *

> 6. When the contract makes provision for *equitable adjustment* of particular claims, such claims may be regarded as converted from breach of contract claims to claims for relief under the contract. * * * [Emphasis supplied.]

*Id.* The Court continued:

> Thus the settled construction of the disputes clause excludes breach of con-

2. The Disputes clause included in the present contract was as follows:

"(a) Except as otherwise provided in this contract, any dispute concerning a question of fact arising under this contract which is not disposed of by agreement shall be decided by the Contracting Officer, who shall reduce his decision to writing and mail or otherwise furnish a copy thereof to the Contractor. The decision of the Contracting Officer shall be final and conclusive unless, within 30 days from the date of receipt of such copy, the Contractor mails or otherwise furnishes to the Contracting Officer a written appeal addressed to the head of the agency involved. The decision of the head of the agency or his duly authorized representative for the determination of such appeals shall be final and conclusive. This provision shall not be pleaded in any suit involving a question of fact arising under this contract as limiting judicial review of any such decision to cases where fraud by such official or his

representative or board is alleged: *Provided, however*, that any such decision shall be final and conclusive unless the same is fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith or is not supported by substantial evidence. In connection with any appeal proceeding under this clause, the Contractor shall be afforded an opportunity to be heard and to offer evidence in support of his appeal. Pending final decision of a dispute hereunder, the Contractor shall proceed diligently with the performance of the contract and in accordance with the Contracting Officer's decision.

"(b) This Disputes clause does not preclude consideration of questions of law in connection with decisions provided for in paragraph (a) above. Nothing in this contract, however, shall be construed as making final the decision of any administrative official, representative, or board on a question of law."

tract claims from its coverage, whether for purposes of granting relief or for purposes of making binding findings of fact that would be reviewable under Wunderlich Act standards rather than *de novo*. * * * In fact the contracting departments have not rejected the narrower judicial reading of the disputes clause nor attempted any wholesale revision of its language to cover all factual disputes. Instead they have acted to create alternative administrative remedies for some breach of contract claims and to disestablish others by fashioning additional *specific adjustment* provisions contemplating relief under the contract in specified situations not reached by such provisions as Articles 3, 4 and 9. [Emphasis supplied.]

*Id.* at 412–413, 86 S.Ct. at 1555.

■ It is clear from *Utah* that the Supreme Court regarded as redressable under the contract (and, therefore, determinable administratively under the Disputes clause) only those claims for which an adjustment is specifically provided by the contract. Accordingly, in Len Co. & Assoc. v. United States, 385 F.2d 438, 181 Ct.Cl. 29 (1967), we rejected the Government's argument that certain claims were redressable under the special Inspection article contained in Capehart Act housing contracts. In doing so we said:

Accepting arguendo the Government's characterization of the reinspection claims, we do not find them redressable under the "Inspection" article because that provision does not authorize the granting of specific relief if, in fact, the additional work proves not to be required. Although arising as a result of the operation of that article, the claims are not made adjustable under or by it. The Supreme Court, this court, and the Armed Services Board have said on many occasions that disputes cannot "arise under" the contract and need not be presented to an administrative tribunal *unless some substantive contract provision authorizes the granting*

*of a specific type of relief*. [Footnote omitted; emphasis supplied.]

385 F.2d at 451, 181 Ct.Cl. at 51.

The Permits and Responsibilities article essentially places the responsibility for "all materials delivered and work performed" on the contractor until such time as the project is completed and accepted by the Government. As between the contracting parties, the crucial function of the article is allocation of risk. There is nowhere in the article a provision for a contract adjustment in the event that work or materials are damaged or destroyed. If plaintiff had been found by the board not to have borne the risk of the hangar's collapse, the board would not have been able to fashion an affirmative remedy for plaintiff under the Permits and Responsibilities article. The Permits and Responsibilities article does not even approach being the type of adjustment provision envisioned in *Utah*.

■ It is defendant's position that in order to qualify as an adjustment provision, as that term is used in *Utah,* a contract clause need only "specify what the rights and obligations of the parties are relative to the claim in controversy." Under this interpretation of *Utah* it is indeed difficult to imagine a contract clause which would fail to qualify as an adjustment provision. We remain of the opinion that an adjustment provision is one which "authorizes the granting of a specific type of relief." Len Co. & Assoc. v. United States, *supra,* 385 F.2d at 451, 181 Ct.Cl. at 51.

## II

As observed earlier, Count II of the petition (the "superior knowledge" claim) incorporates by reference the factual allegations of Count I (the defective specifications claim under the Changes clause). Furthermore, it should be noted that plaintiff seeks judgment in the same amount ($3,700,000) under both counts— as an equitable adjustment under the Changes clause in Count I and as breach damages in Count II. Both counts set forth essentially the same claim.

This situation seems much like that with which the court was confronted in L. W. Foster Sportswear Co. v. United States, 405 F.2d 1285, 186 Ct.Cl. 499 (1969). There the plaintiff, which had contracted with the Navy to manufacture 54,000 goatskin flying jackets, had requested the contracting officer to make an equitable adjustment in price under the Changes clause on the ground that it had incurred additional costs as a result of defective specifications and improper inspections. The contracting officer refused and the Armed Services Board of Contract Appeals denied plaintiff's appeal. In this court plaintiff challenged the board's decision and asserted alternatively that it was entitled to recover on the same facts on a theory of breach of contract. The court held:

> Since its claims were entirely redressable under the contract, however, plaintiff is limited to that relief. It cannot maintain a separate breach of contract action which seeks no further or different relief. [Citing cases.]

*Id.*, 405 F.2d at 1287, 186 Ct.Cl. at 502.

We adhere to the view stated in *Foster*. Where a plaintiff, in a Government contract case, states a claim which is fully redressable under the contract, the plaintiff cannot be permitted to maintain a separate claim for breach which is merely a recharacterization of the claim which is redressable under the contract. To allow a plaintiff to maintain such a claim would amount to subversion of the *Utah* decision.

We would be inclined to view the present case as indistinguishable from *Foster* if it were not for the fact that, in our opinion, plaintiff's claim, when characterized as a change (as in Count I), is not redressable under the Changes clause because it alleges a cardinal change.

The cardinal change doctrine is not a rigid one. Its purpose is to provide a breach remedy for contractors who are directed by the Government to perform work which is not within the general scope of the contract. In other words, a cardinal change is one which, because it fundamentally alters the contractual undertaking of the contractor, is not comprehended by the normal Changes clause. As we said in Wunderlich Contracting Co. v. United States, 351 F.2d 956, 173 Ct.Cl. 180 (1965), there is no automatic or easy formula which can be used to determine whether a change (or changes) is beyond the scope of the contract and, therefore, in breach of it. "Each case must be analyzed on its own facts and in light of its own circumstances, giving just consideration to the magnitude and quality of the changes ordered and their cumulative effect upon the project as a whole." *Id.*, 351 F.2d at 966, 173 Ct.Cl. at 194.

This court has frequently said that "a contractor is entitled to an equitable adjustment under the Changes article for increased costs of performance due to defective specifications." L. W. Foster Sportswear Co. v. United States, *supra*, 405 F.2d at 1290, 186 Ct.Cl. at 507 (1969). *See, e. g.*, Bell v. United States, 404 F.2d 975, 981, 186 Ct.Cl. 189, 200 (1968). But, where drastic consequences follow from defective specifications, we have held that the change was not within the contract, *i. e.*, that it was a cardinal change. In Luria Bros. & Co. v. United States, 369 F.2d 701, 177 Ct.Cl. 676 (1966), plaintiff was the contractor under a Navy contract which called for construction of, *inter alia*, an airplane hangar like the one involved in the present case. In *Luria Bros.* the original specifications were defective in that "[t]hey misrepresented the nature of the bearing value of the material underlying the foundation of the structure at the prescribed elevations and hence the dimension and depth at which the arch-column footings were to rest * * *." *Id.*, 369 F.2d at 707, 177 Ct.Cl. at 687. As a result of revised specifications the footings were placed at elevations from 5 to 10 feet lower than the original elevations. Because of the significant consequences of these changes, we held that the contract had been breached by the Government.

■ Here, plaintiff alleges in Count I that the specifications were defective in failing to specify that the tie rods had to be installed before the arches were released on the buttresses, that the structure collapsed due to this defect, and that plaintiff was ordered to reconstruct the hangar. Further, plaintiff alleges that the whole affair resulted in increased costs of $3,700,000. It is clear that the claim alleged in Count I is not one encompassed by the Changes clause. The alleged change involved major reconstruction and, according to plaintiff, resulted in increased costs of almost double the contract price. By any standard the events alleged would have to be deemed to have materially altered the nature of the contractor's undertaking. If plaintiff's allegations are true, then it performed work which was not "essentially· the same work as the parties bargained for when the contract was awarded." Aragona Constr. Co. v. United States, 165 Ct.Cl. 382, 391 (1964). Our decision on this point is based on the sheer magnitude of reconstruction work caused by the alleged defective specifications.

Admittedly this case differs from the usual cardinal change case [3] in at least one important respect. In the present case the reconstructed hangar was, presumably, the identical hangar called for in the original specifications. In other words, in directing reconstruction of the hangar, the Government did not alter the design or other physical characteristics of the structure. We do not view this as a crucial difference, however. Where a cardinal change is concerned, it is the entire undertaking of the contractor, rather than the product, to which we look.

Since we have found that plaintiff's claim, as expressed in Count I, is not encompassed by the Changes clause and we know of no other contract adjustment provision under which· Count I would be redressable, we must necessarily conclude that the claim is not redressable under the contract. The board, therefore, was without jurisdiction to consider the claim. Even though the board evidently was of the opinion that the claim was properly before it, its findings of fact on that claim were gratuitous and such findings do not preclude or limit a trial de novo on the merits of Count II in this court. See Air-A-Plane Corp. v. United States, *supra* note 3; Morrison-Knudsen Co. v. United States, 345 F.2d 833, 838, 170 Ct.Cl. 757, 764 (1965).

■ Plaintiff has not moved for a de novo trial on Count I. Needless to say, however, in disposing of plaintiff's motion on Count II we have, in effect, held that a de novo trial on Count I would be proper because it alleges a cardinal change. In view of the circumstances we deem it appropriate to consider the two counts as merged into one count for breach of contract.

### III

We thus hold that plaintiff's Count II is not redressable under the contract and that the board's findings with respect to the claim alleged in Count I were gratuitous and in no way preclude or limit à de novo trial on Count II in this court. Further, because Count I alleges a cardinal change, we hold that the two counts are merged into one count for breach of contract.

For the foregoing reasons we deny defendant's request for review of the commissioner's order, which order is modified to the extent set forth herein. The case is remanded to the trial commissioner for further proceedings consistent with this opinion.

3. *See* Air-A-Plane Corp. v. United States, 408 F.2d 1030, 187 Ct.Cl. 269 (1969), and cases cited at n. 2 of that opinion.