[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-15336

_____

D.C. Docket No. 8:12-cv-00942-VMC-MAP


UNITED STATES OF AMERICA, for the Use & Benefit of RAGGHIANTI
FOUNDATIONS III, LLC,

Plaintiff-Appellant,

versus

PETER R. BROWN CONSTRUCTION, INC.,
LIBERTY MUTUAL INSURANCE COMPANY,
SAFECO INSURANCE COMPANY OF AMERICA,

Defendants-Appellees.


_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(January 4, 2017)

Before TJOFLAT, ROSENBAUM, and ANDERSON, Circuit Judges.

PER CURIAM:

Defendant-Appellee Peter R. Brown Construction, Inc. ("PRBC"), hired Plaintiff-Appellant Ragghianti Foundations III, LLC ("Ragghianti"), as a subcontractor to pour concrete for the construction of a military training facility in San Angelo, Texas.  Concluding that Ragghianti did a poor job, PRBC terminated its contract with Ragghianti for default.  Ragghianti, however, blamed any deficiencies in the construction project on PRBC's own shortcomings in orchestrating the project.  Through this lawsuit, Ragghianti sought to recover damages in the form of costs it incurred as a result of PRBC's alleged mismanagement and negligence.

Following a bench trial, the district court denied Ragghianti's claims, except that it awarded the money Ragghianti was still owed for work performed.  Because Ragghianti cannot show that its subcontract entitled it to the damages it sought, we affirm the district court's judgment.

## I.  Background

Detailed findings of fact are set forth in the district court's order.  We include a summary of facts relevant to this appeal.

On August 16, 2010, the United States Army Corps of Engineers ("Corps") contracted with PBS&J Constructors, Inc., to build a military training facility in

2

San Angelo, Texas.  In compliance with the Miller Act, 40 U.S.C. § 3131,[1] PBS&J obtained payment and performance bonds from sureties Liberty Mutual Insurance Company and Safeco Insurance Company of America, naming PBS&J as principal, and PBS&J furnished them to the government.

PBS&J's subsidiary, PRBC, entered into a subcontract with Ragghianti on January 24, 2011.  The subcontract required Ragghianti to install the concrete for the training facility, including its slab on grade foundation.  By the subcontract's terms, the law of the state in which the project was located—Texas—governed the relationship, except where otherwise provided.

From its start, the construction project was beset by obstacles causing delay and deviation from its ever-amended schedule.  First, Ragghianti was not prepared to mobilize its labor until almost three weeks after the scheduled time due to its delay in procuring a bond, as required by the subcontract.  Then PRBC was not ready for Ragghianti's work until over two months after that.  Next, unforeseen soil conditions delayed drilling.  When drilling resumed, Ragghianti's failure to provide sufficient labor further delayed the project.  In late 2011, the Corps issued PRBC a draft "interim unsatisfactory" review.

---

[1] Subsection 3131(b) of Title 40 provides that "[b]efore any contract of more than $100,000 is awarded for the construction, alteration, or repair of any public building or public work of the Federal Government, a person must furnish to the Government [a performance bond and a payment bond], which become binding when the contract is awarded."

3

Most significantly for purposes of this appeal, the initial concrete pour for the slab on grade went terribly. Only six of the expected thirteen workers from Ragghianti's sub-subcontractor showed up on February 14, 2012, the day of the pour. Then eight of the fourteen pump trucks transporting concrete turned the concrete for longer than the 90-minute time limit before use. As a result, much of the concrete became too dry to finish properly. While Ragghianti blames PRBC in part for the quality of the concrete it provided and for delaying the pump trucks, neither party currently disputes that the finish on the slab was of "unacceptable quality."

On February 16, 2012, PRBC issued a failure-to-perform letter related to the February 14 concrete pour. The failure-to-perform letter provided Ragghianti 48 hours to remove the unsatisfactory concrete, and it requested an action plan for future slab pours. Ragghianti submitted an action plan the next day, which stated that "demolition of the existing [slab on grade]" would commence no later than February 20 and could "arguably" be completed within a week's time.

By the morning of February 22, however, Ragghianti's workers still had not begun removing the slab, despite having been on premises for most of the intervening days. So on February 22, 2012, PRBC issued a notice-of-termination letter, citing Ragghianti's failure to cure the defective slab on grade, among other faults. Although Ragghianti employed one worker and one piece of borrowed

4

equipment to begin breaking up the concrete slab on February 22 and 23, PRBC did not consider this a sufficient attempt to complete the necessary remedial work in a timely manner. PRBC therefore hired other subcontractors to break up the slab and complete the concrete work for the training facility.

In April 2012, Ragghianti filed suit. The amended complaint set forth a breach-of-contract claim against PRBC and an alternative claim for damages in quantum meruit. Ragghianti also sought recovery from PRBC's co-sureties, Safeco Insurance and Liberty Mutual, under the Miller Act. PRBC counterclaimed for contractual indemnification and breach of contract.

Following a five-and-a-half-day bench trial, the district court awarded Ragghianti damages under the subcontract for its unpaid furnished labor and materials but denied its other claims. The court entered judgment in favor of PRBC on both of its claims, an award totaling $435,457 after Ragghianti's damages were subtracted from PRBC's. In addition, the court awarded PRBC attorneys' fees, which have yet to be determined.

## II.  Analysis

Following a bench trial, we review a district court's factual findings for clear error and its legal conclusions *de novo*. *Renteria-Marin v. Ag-Mart Produce, Inc.*, 537 F.3d 1321, 1324 (11th Cir. 2008).

5

Ragghianti raises four main issues on appeal.  First, Ragghianti argues that the district court erred in holding that fair-notice requirements under Texas law were not applicable to the indemnity provisions at issue in the subcontract. Second, Ragghianti disputes the district court's determination that Ragghianti was properly terminated for default rather than at PRBC's convenience.  Third, Ragghianti takes issue with the scope of damages that the district court awarded it. And fourth, Ragghianti challenges the decisions of the district court denying Ragghianti's attorneys' fees and granting PRBC's attorneys' fees.  We address each argument in turn.

## A.

We begin with the district court's determination that Texas's fair-notice requirements were not applicable to the indemnity provisions under review.  In Texas, "extra-ordinary risk shifting clauses" that indemnify a party from the consequences of its own negligence or release a party in advance for liability for its own negligence must meet two so-called fair-notice requirements.  *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 386 (Tex. 1997).  First, the express-negligence doctrine requires "a party seeking indemnity from the consequences of that party's own negligence [to] express that intent in specific terms within the four corners of the contract."  *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993) (citation omitted).  Second, the terms must appear conspicuously "on

6

the face of the contract to attract the attention of a reasonable person when [s]he looks at it." *Id.* (alteration and internal quotation marks omitted).

The fair-notice requirements are intended to protect an indemnitor from accidentally agreeing, as a result of deliberately ambiguous and unfortunately construed contract language, to indemnify the indemnitee for the consequences of the indemnitee's own negligence. *Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705, 707-08 (Tex. 1987). They therefore come into play when an indemnitor seeks indemnity for the results of its own negligence—and only then. *See id.* at 708 ("*Indemnitees seeking indemnity for the consequences of their own negligence which proximately causes injury jointly and concurrently with the indemnitor's negligence must also meet the express negligence test.*") (emphasis added). Notably, even if a contractual provision shifts liability for a prosecuting party's own negligence, the express-negligence doctrine does not apply when the party does not seek to recover for its own negligence. *See MAN GHH Logistics GMBH v. Emscor, Inc.*, 858 S.W.2d 41, 43 (Tex. Ct. App. 1993).

Ragghianti argues that the damages PRBC obtained as a result of Ragghianti's breach should be considered attributable to PRBC's own negligence because PRBC was, in Ragghianti's view, at least partly to blame for the deficient slab on grade. As a result, Ragghianti reasons, the subcontract between PRBC and Ragghianti was required to comply with the fair-notice requirements in order for

7

the district court to have been able to order Ragghianti to indemnify PRBC for the consequences of PRBC's alleged own negligence.

But significantly, neither Ragghianti nor PRBC brought any claim or counterclaim sounding in negligence. So under the circumstances of this case, the fair-notice requirements simply do not apply. *See Quorum Health Res., L.L.C. v. Maverick Cty. Hosp. Dist.*, 308 F.3d 451, 459 (5th Cir. 2002) (noting, under Texas law, that "[t]he express negligence rule applies if [indemnitee] seeks indemnification for its own acts of negligence or for the joint or concurrent negligence of [indemnitee] and [indemnitor]"); *MAN GHH Logistics GMBH*, 858 S.W.2d at 43 ("[T]he express negligence rule does not apply in this case because appellants are not seeking to recover for their own negligence.").

Ragghianti may not recast its breach-of-contract claim on appeal as one of negligence. Nor may we accept Ragghianti's invitation to infer that PRBC must have been negligent to the extent that Ragghianti was entitled to any damages under the subcontract.

Ragghianti nonetheless argues that PRBC's counterclaims are akin to negligence claims, citing *Ewing Construction Co. v. Amerisure Insurance Co.* for the proposition that in Texas, claims of failure to properly perform under a construction contract are considered "substantively the same" as claims of

negligence.  420 S.W.3d 30, 37 (Tex. 2014).  *Ewing*, however, does not help Ragghianti.

That case involved a dispute over insurance coverage in which Ewing Construction Company was sued for breach of contract and negligence, based on work it had done building tennis courts.  Ewing tendered defense of that lawsuit to its insurance company, and the insurance company denied coverage.  As a result, Ewing filed suit seeking a declaration that its insurance company had breached duties to defend Ewing and indemnify it for any damages awarded against it in the underlying lawsuit.

The policy at issue in *Ewing* contained a contractual liability exclusion, which, as relevant in *Ewing*, excluded coverage for claims for damages based on an insured's contractual assumption of liability, except where the insured's liability for damages would exist even in the absence of the contract.  *Id.* at 36.  The terms of the contract at issue in *Ewing* required Ewing to construct the courts "in a good and workmanlike manner."  *Id.*  Discussing the meaning of this specific contractual provision, the Texas Supreme Court explained that it imposed no greater obligation on Ewing than Texas law, through the tort of negligence, otherwise did.  *Id.* at 37.  As a result, the Texas Supreme Court noted, under the contract at issue in *Ewing*, the claims for breach of contract and for negligence were necessarily based on the "same factual allegations and alleged misconduct."  *Id.*  Thus, the Texas Supreme

9

Court described the two specific claims at issue in *Ewing* as "substantively the same," for purposes of determining whether the contractual liability exclusion excluded coverage for each of them. *Id.* *Ewing* did not consider and does not stand for the proposition that a breach-of-contract claim alleging specific contractual breaches is to be treated as substantively identical to a negligence claim.

Because PRBC does not in this action attempt to recover under the subcontract costs attributable to its own negligence, we need not determine whether the subcontract explicitly and conspicuously would allow PRBC to do so.[2]

Ragghianti attempts to subject the subcontract to the fair-notice requirements because PRBC sought to recover its defense costs. Ragghianti contends that, under Texas law, "any indemnity clause that allows assessment of an indemnitee's attorneys' fees against an indemnitor must meet the Express Negligence Doctrine."

Ragghianti bases this incorrect proposition on a misreading of *Fisk Electric Co. v. Constructors & Associates, Inc.* 888 S.W.2d 813 (Tex. 1994). In *Fisk*, the Texas Supreme Court held that an indemnitee could not recover the costs of defending against a negligence action where the contractual provisions at issue did

---

[2] Nevertheless, we note that the district court correctly concluded that the contract provisions with which Ragghianti takes issue do not purport to shift the risk of PRBC's negligence to Ragghianti. Of note, the subcontract provides that "nothing contained herein shall be . . . construed as an agreement to indemnify anyone for their own negligence once such negligence has been finally adjudicated by a court of law . . . ." It would therefore be impossible for PRBC to recover costs attributable to its own negligence under the terms of the subcontract.

10

not comply with the express-negligence doctrine. *Id.* at 815-16. The *Fisk* holding is inapposite here, where no negligence claim was brought and defended against.

The district court correctly held, under Texas law, that the subcontract was not required to conform to the fair-notice requirements.

**B.**

Ragghianti next contests the district court's determination that Ragghianti was properly terminated for default rather than at PRBC's convenience. In support of its position, Ragghianti makes two essential arguments: first, that the Federal Acquisition Regulations ("FAR") entitled it to ten days' default notice rather than the two days afforded by the subcontract; and second, that PRBC in any case failed to comply with the subcontract's requirement that PRBC give Ragghianti two days' notice before terminating the subcontract for Ragghianti's default.

Ragghianti contends that the subcontract incorporated 48 C.F.R. § 49.402-3, a subsection of the FAR that affords a subcontractor notice prior to termination for default, along with at least ten days in which to cure its failure to perform under the contract. In support of this position, Ragghianti points to Exhibit K of the subcontract, which expressly incorporates specified subsections of the FAR. Significantly, however, § 49.402-3 is not among those listed.

Ragghianti maintains that the subcontract nevertheless incorporates § 49.402-3, based on the following language: "The following FAR provisions are

hereby incorporated by reference into this Subcontract, with the same force and effect as if set forth in full text herein. The full text can also be accessed electronically at http://farsite.hill.af.mil and http://www.acqnet.gov/far." Because the full text of § 49.402-3 may be accessed on those websites, Ragghianti insists, the subcontract incorporates its text as well.

Ragghianti's suggested reading would require us to ignore the fact that the subcontract expressly incorporates only selected portions of the FAR, as opposed to incorporating the FAR as a whole. It would also render meaningless the subcontract's own two-day notice and opportunity-to-cure provisions. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003) ("In construing a written contract . . . we must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless."). We therefore agree with the district court that the subcontract did not incorporate the FAR's ten-day notice requirement for termination by default.

Next, Ragghianti argues that PRBC's termination of the subcontract did not comply with the two-day notice and opportunity-to-cure requirements set forth in Article 10.1 of the subcontract. That provision specified PRBC's remedies, including terminating the subcontract for default, in the event Ragghianti "fail[ed] to provide sufficient properly skilled workers, adequate supervision or material of

12

the proper quality," among other things.  Article 10.1 also entitled Ragghianti to written notice of the condition causing the default and two days to cure it or, if that was not possible, the opportunity for a good-faith demonstration that it was "attempting to expeditiously resolve the condition."

Based on the evidence presented over the course of the five-day bench trial, the district court found that the February 16, 2012 failure-to-perform letter served to notify Ragghianti in writing that the slab on grade poured on February 14 was deficient and needed to be remedied.  The district court further determined that Ragghianti failed to remedy the condition within two days and that it did not even begin to remedy it until after the morning of February 22—*six* days after Ragghianti received the failure-to-perform letter.  Then, when Ragghianti finally began to break up the deficient concrete for removal and replacement on February 22, Ragghianti used only one worker and one piece of equipment (borrowed from PRBC) to do so.  So PRBC issued the notice-of-termination letter, terminating the subcontract for default, on February 22.  Based on these facts, all of which find support in the record, the district court concluded that Ragghianti received notice and an opportunity to cure—or to make a good-faith attempt at curing—the faulty slab on grade in accordance with Article 10.1 of the subcontract.  We find no clear error in any of the district court's factual findings or in its ultimate conclusion that PRBC terminated the contract for default.

We also agree with the district court that PRBC followed the proper procedure in terminating Ragghianti's subcontract for default. Though Ragghianti argues that the failure-to-perform letter did not satisfy the two-day notice requirement because it did not specifically mention the possibility of termination, nothing in Article 10.1 required PRBC's notice to specify which remedy it would pursue. Instead, Article 10.1 merely required PRBC to provide notice that one or more of nine enumerated failures to perform had occurred before it pursued any available remedy. The letter plainly did that. As for Ragghianti's contention that it was entitled to a new two-day notice after it began to break up the concrete on February 22, nothing in Article 10.1 of the subcontract required PRBC to renew its notice before invoking termination by default, particularly under the circumstances here, where Ragghianti effectively did no more than go through the motions of attempting to cure its deficient performance.

## C.

In its third argument on appeal, Ragghianti takes issue with the scope of damages that the district court awarded to it. The district court held that Ragghianti was entitled to damages for its unpaid furnished labor and materials, totaling $392,000. But the district court denied Ragghianti's claim for damages for unearned lost profits, unabsorbed home office overhead, and increased costs

14

attributable to delay.  Ragghianti argues on appeal that, under the Miller Act or in quantum meruit, it is entitled to damages caused by PRBC's delay.

Although damages for delay are generally available under the Miller Act, *United States, for Use & Benefit of Pertun Constr. Co. v. Harvesters Grp., Inc.*, 918 F.2d 915, 916 (11th Cir. 1990), in this case, the subcontract contained a "no damages for delay" clause.  Such clauses are generally enforceable under Texas law, *see Green Int'l, Inc.*, 951 S.W.2d at 387, and Ragghianti does not argue otherwise.

Instead, Ragghianti points to Section 9 of Exhibit G to the subcontract as allowing Ragghianti to submit a claim for delay damages.  Section 9 grants Ragghianti the same "rights and obligations" as the Construction Manager under the terms of the Prime Contract.  The Prime Contract, in turn, allows the Contractor to make a claim for an adjustment in response to the Contracting Officer's change orders, and such adjustments include costs imposed by delay.  So Ragghianti contends that it is likewise entitled to delay damages under the terms of its subcontract.[3]

The district court rejected this argument on two grounds: first, the Prime Contract does not in fact entitle PRBC to delay damages as Ragghianti claims; and

---

[3] We note that the subcontract similarly allows Ragghianti to submit claims to adjust the subcontract price in response to change orders, and to serve written notice if Ragghianti believes a change order is warranted.

second, Ragghianti failed to serve any notice or claim for an adjustment as required by Articles 9.2 and 9.4 of the subcontract. Because we find no clear error in the district court's determination that Ragghianti failed to serve written notice, we need not consider the first basis for the district court's rejection of Ragghianti's claim. Under the subcontract, compliance with the notice requirement is a condition precedent to Ragghianti's right to an adjustment. *See Emerald Forest Util. Dist. v. Simonsen Constr. Co.*, 679 S.W.2d 51, 54 (Tex. Ct. App. 1984), *writ ref'd n.r.e.* (Mar. 20, 1985) ("When a contract provides for a particular form of notice, compliance with such provisions is a condition precedent to invoking the contract rights which are conditioned on the notice."). Since Ragghianti failed to provide such notice, the district court correctly denied Ragghianti's claims for delay damages under the subcontract.

Ragghianti also challenges the district court's determination that Ragghianti was not entitled to damages in quantum meruit pursuant to the cardinal-change doctrine. The cardinal-change doctrine "provide[s] a breach remedy for contractors who are directed by the Government to perform work which is not within the general scope of the contract." *Edward R. Marden Corp. v. United States*, 442 F.2d 364, 369 (Ct. Cl. 1971). A "cardinal change" is one that "fundamentally alters the contractual undertaking" such that it is "not comprehended by the normal Changes clause." *Id.*

16

Ragghianti argues on appeal that the district court "misconstrued" the doctrine by looking to the final product rather than to the "entire undertaking of the contractor" to determine whether any of PRBC's alterations to the subcontract wrought a cardinal change. *Id.* at 370. But the district court specifically concluded that the changes identified by Ragghianti "were reasonably expected" and did not "demonstrate that Ragghianti's undertaking of the Project was materially altered or that PRBC required work from Ragghianti that was not essentially the same work as the parties bargained for when the contract was awarded." So the district court used the appropriate baseline against which to measure a cardinal change. We find no error in its analysis.

## D.

Finally, Ragghianti challenges the district court's denial of Ragghianti's attorneys' fees and granting of PRBC's attorneys' fees. We review the district court's award and denial of attorneys' fees for an abuse of discretion. *Legg v. Wyeth*, 428 F.3d 1317, 1320 (11th Cir. 2005); *Florence Nightingale Nursing Serv., Inc. v. Blue Cross/Blue Shield of Alabama*, 41 F.3d 1476, 1485 (11th Cir. 1995). We cannot conclude that the district court abused its discretion with respect to either decision.

Turning first to the district court's denial of fees to Ragghianti, Ragghianti sought and the district court denied attorneys' fees against PRBC, Liberty Mutual,

17

and Safeco Insurance under the Miller Act.  Attorneys' fees may be awarded under the Miller Act in accordance with an enforceable contractual provision or where evidence shows the "opponent has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  *F.D. Rich Co. v. United States for Use of Indus. Lumber Co.*, 417 U.S. 116, 129 (1974).  Ragghianti has shown neither, so the district court correctly denied Ragghianti's request for attorneys' fees.

As for Ragghianti's suggestion that it is entitled to attorneys' fees against PRBC for its successful breach-of-contract claim, Ragghianti has waived any such argument since Ragghianti failed to brief it.  *See Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1293 (11th Cir. 2009) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed." (quotation omitted)); *Green Int'l, Inc.*, 951 S.W.2d at 389 ("[I]f no one objects to the fact that the attorney's fees are not segregated as to specific claims, then the objection is waived.").

Nor did the district court abuse its discretion in awarding PRBC attorneys' fees.  Ragghianti argues that PRBC cannot obtain attorneys' fees under the subcontract's indemnification provisions because they fail to comply with the fair-notice requirements.  As we have explained, however, in light of the causes of action at issue in this case, the subcontract did not need to comply with the fair-notice requirements.

18

Ragghianti finally challenges the district court's order directing PRBC to file a motion for attorneys' fees and costs under Federal Rule of Civil Procedure 54, which Ragghianti argues cannot apply where attorneys' fees are recovered under an indemnity provision.  However, Rule 54 does not foreclose motions for attorneys' fees provided for by contract.  *Capital Asset Research Corp. v. Finnegan*, 216 F.3d 1268, 1269-70 (11th Cir. 2000); *see also Richardson v. Wells Fargo Bank, N.A.*, 740 F.3d 1035, 1039–40 (5th Cir. 2014).  And "district courts enjoy broad discretion in deciding how best to manage the cases before them." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1366 (11th Cir. 1997).  We cannot conclude that the district court erred in directing PRBC to file a post-trial motion for attorneys' fees.[4]

### III.  Conclusion

For the reasons stated above, the judgment of the district court is affirmed in all respects.

**AFFIRMED**.

---

[4] The district court denied without prejudice PRBC's post-trial motion for attorneys' fees, given Ragghianti's notice of appeal.

19

TJOFLAT, Circuit Judge, concurring:

For the reasons given in the court's considered opinion, I concur to affirming the district court in all respects because Ragghianti cannot show that its subcontract entitled it to the damages it sought. I write separately to emphasize that this is a simple dispute between experienced, sophisticated parties who contracted intelligently and voluntarily, as evidenced by their corporate histories and renegotiations during the course of dealings. PRBC and Ragghianti entered into a subcontract with Ragghianti to provide the building foundation, slab on grade, miscellaneous concrete, and site concrete to the Project. Ragghianti failed to fully uphold its end of the bargain. As a result, PRBC received damages. Any inference of Ragghianti exploiting PRBC as a vulnerable, unseasoned entity is tenuous.