DOCUMENT FOR PUBLIC RELEASE.
The decision issued on the date below is subject to an ASBCA Protective Order.
This version has been approved for public release.

ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeals of - | ) | |
| | ) | |
| Huffman Construction, LLC | ) | ASBCA Nos. 62591, 62783 |
| | ) | |
| Under Contract No. W912EQ-14-C-0028 | ) | |

APPEARANCES FOR THE APPELLANT:   S. Leo Arnold, Esq.
                                          Matthew W. Willis, Esq.
                                            Arnold, Willis & Conway
                                            Dyersburg, TN

APPEARANCES FOR THE GOVERNMENT: Michael P. Goodman, Esq.
          Engineer Chief Trial Attorney
      Edward J. McNaughton, Esq.
          Engineer Trial Attorney
          U.S. Army Engineer District, Huntsville

      Seth A Rowland, Esq.
      John R. Holton, Esq.
          Engineer Trial Attorneys
          U.S. Army Engineer District, Memphis

OPINION BY ADMINISTRATIVE JUDGE HAMADY ON
GOVERNMENT'S MOTION TO STRIKE APPELLANT'S POST-HEARING
REPLY BRIEF AND APPELLANT'S MOTION FOR LEAVE TO FILE A REVISED
POST-HEARING REPLY BRIEF

      Pending before the Board is the Department of the Army Corps of Engineers'
(Corps or government) motion to strike Appellant Huffman Construction, LLC's
(Huffman or appellant) post-hearing reply brief. Huffman opposes the government's
motion and seeks leave to file a revised post-hearing reply brief with corrected
citations. For the reasons set forth below, we grant the government's motion and deny
Huffman's motion.

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

      1. On June 26, 2020, Huffman filed a notice of appeal from a contracting
officer's final decision dated March 31, 2020, terminating Huffman's contract number
W912EQ-14-C-0028 for default. This appeal was docketed as ASBCA No. 62591.

DOCUMENT FOR PUBLIC RELEASE.
The decision issued on the date below is subject to an ASBCA Protective Order.
This version has been approved for public release.

2.  On January 11, 2021, Huffman filed a notice of appeal from a contracting officer's final decision dated October 27, 2020, denying Huffman's claim for a 182-day extension of time and a price adjustment in the amount of $620,787.39.  This appeal was docketed as ASBCA No. 62783.

3.  The Board held a seven-day hearing in these appeals between February 4-12, 2025.

4.  Huffman filed its post-hearing brief on May 19, 2025.  The Corps filed its post-hearing brief on July 18, 2025.  Huffman filed its post-hearing reply brief on August 15, 2025, which is the subject of the Corps' motion.

5.  The Corps filed its motion to strike Huffman's post-hearing reply brief on August 20, 2025, alleging Huffman's brief appeared to rely on artificial intelligence (AI) because its brief contained twenty-nine (29) false or misleading citations to the hearing transcript; twelve (12) false or misleading citations to the Rule 4 file; and seven (7) false or misleading citations to case law (gov't mot. at 1).  The Corps identified each of the alleged false or misleading citations and explained in detail why each was false or misleading.  Among these include citations to fictitious case law, hearing testimony from witnesses who never testified at the hearing, documents not found in the Rule 4 file, pages of the hearing transcript that do not exist, testimony found in hearing transcripts that do not support the factual contention for which they were cited, and citations to cases that do not support the proposition for which they were cited.  (*Id.*)

6.  In response to the Corps' motion to strike, counsel for Huffman admits to using "AI technology to assist in formulating portions of [Huffman's] reply brief, including generating citations" and did not dispute any of the errors identified by the Corps (app. opp'n at 1-3).  Huffman's counsel represents that the AI technology employed in drafting Huffman's reply brief had "been successfully utilized in other matters by counsel" and that he recognized "the potential for AI-generated errors" and "implemented safeguards to ensure the accuracy of the citations and the overall integrity of the filing" (app. opp'n at 1).  The safeguards, according to Huffman's counsel, included a review of the reply brief by "two experienced attorneys" and a "[q]ualified and [t]rusted paralegal" with "over 20 years of experience" such that Huffman's counsel had "full confidence in [the paralegal's] ability to identify and address any potential issues" (*id.* at 2).  In seeking to correct its admittedly erroneous reply brief, counsel for Huffman acknowledges the errors and "takes responsibility for the oversight," while contending that the errors identified by the Corps "were not the result of imprudent use of technology or a failure to institute appropriate safeguards but were unintentional and regrettable" (*id.* at 2-3).

2

DOCUMENT FOR PUBLIC RELEASE.
The decision issued on the date below is subject to an ASBCA Protective Order.
This version has been approved for public release.

7. The Board reviewed all citations included in Huffman's reply brief and found that over seventy percent of them were inaccurate, including citations not identified by the Corps in its motion. Among the allegations of false or misleading representations or citations that were verified by the Board are the following, categorized by type:[1]

*Factual contentions unsupported by the Rule 4 citation*

   a. Huffman's counsel represented that paragraph 3.3.1 of Section 112000.00 of the contract "imposed a specific obligation on the Contracting Officer to resolve disputes between the erection engineers' requirements" (app. reply at 6). That paragraph instead speaks to installation procedures pertaining to major equipment, and says nothing about resolving disputes (R4, tab 4 at 1138-39).

   b. Huffman's counsel represented that "Ideal's field service report, generated under the supervision of its erection engineer, documented bearing resistance, oxidation on shaft surfaces, and recommended full disassembly and inspection of the lower guide bearings (R4, tab 91, at p. 2-3) (app. reply at 10-11). The cited Rule 4 tab is not an Ideal field service report, but a letter from Huffman to the contracting officer and it does not mention an Ideal field service report.

*Fictitious Cases and Incorrect citations*

   c. Huffman's counsel cited *Santa Fe Engineers, Inc.*, ASBCA No. 29708, 88-2 BCA ¶ 20,621, multiple times in its reply brief (app. reply at 6, 10, 16, 22). The appeal was cited for propositions related to government-caused delay and the propriety of default terminations (app. reply at 6, 10, 22), and the government's inability to fault a contractor for failing to perform one scope of work, when that work is linked to another scope of work (app. reply at 16). The Board was unable to find a decision with this ASBCA number. The Board Contract Appeals Decisions (BCA) reporter, cited at 88-2 BCA ¶ 20,621, involves the appeal of *J.B. Engineering Contractors, Inc.*, involving an Equal Access to Justice application, not Santa Fe Engineers, Inc. *J.B. Eng'g Contractors, Inc.*, ASBCA No. 33390, 88-2 BCA ¶ 20,621. The Board did find, however, two appeals brought by Santa Fe Engineers, Inc. in the cited reporter. *Santa Fe Eng'rs, Inc.*, ASBCA No. 31847, 88-2 BCA ¶ 20,619

---

[1] The Board notes that this is not an exhaustive list, but merely representative samples of the types of false or misleading representations made in Huffman's reply brief. There are too many to reasonably include in the Board's decision.

DOCUMENT FOR PUBLIC RELEASE.
The decision issued on the date below is subject to an ASBCA Protective Order.
This version has been approved for public release.

at 104,210; *Santa Fe Eng'rs, Inc.*, ASBCA No. 34226, 88-2 BCA ¶ 20,639 at 104,323. Neither of the appeals support the propositions for which the cited appeal was referenced.[2]

d. Huffman's counsel cited *Astro-Space Labs., Inc.*, ASBCA No. 9367, 65-1 BCA ¶ 4,349, for the proposition that "where defective Government-Furnished Equipment prevents timely completion, the contractor is entitled to both time extensions and equitable adjustment" (app. reply at 22). ASBCA No. 9367 involves an appeal by the Turner Murphy Company, not Astro-Space Labs., Inc. *Turner Murphy Co.*, ASBCA No. 9367, 1964 BCA ¶ 4,367 at 21,108. ASBCA No. 9367 also involves a default termination relating to the appellant's failure to comply with paint specifications, not defective government furnished equipment preventing timely completion. *Id.* The Board was unable to find any ASBCA decisions involving Astro-Space Labs., Inc.

e. Huffman's counsel cited *Grumman Aerospace Corp.*, ASBCA No. 46834, 00-2 BCA ¶ 31,083 for the proposition that "under FAR 52.245-2, the Government bears responsibility for providing Government-Furnished Property that is suitable for its intended purpose, and defects or omissions in such property or associated data give rise to recovery for the contractor" (app. reply at 13). Based on the Board's review, while ASBCA No. 46834 is an appeal involving Grumman Aerospace Corporation, the BCA reporter cited, 00-2 BCA ¶ 31,083, involves an appeal by Custom Blending & Packaging, Inc., which does not discuss FAR 52.245-2. *Custom Blending & Packaging, Inc.*, ASBCA No. 49819, 00-2 BCA ¶ 31,083. The correct reporter for ASBCA No. 46834 is 98-1 BCA ¶ 29,562, but that decision also does not discuss FAR 52.245-2. *Grumman Aerospace Corp.*, ASBCA Nos. 46834, 48006, 98-1 BCA ¶ 29,562.

f. Huffman's counsel cited *Remm Co.*, 74-2 BCA ¶ 10,660, for the proposition that "a contractor making a reasonable inquiry for specification clarification is entitled to a reasonable – and timely – response" (app. reply at 6). The citation did not include any ASBCA

---

[2] ASBCA No. 31847, involves the Board's denial of a government motion for summary judgment due to disputed issues of material fact concerning whether a bilateral contract modification foreclosed a contractor's claim for impact and overhead costs. *Santa Fe Eng'rs, Inc.*, ASBCA No. 31847, 88-2 BCA ¶ 20,619 at 104,210. ASBCA No. 34226, involves an issue of contract interpretation relating to paint specifications. *Santa Fe Eng'rs, Inc.*, ASBCA No. 34226, 88-2 BCA ¶ 20,639 at 104,323.

DOCUMENT FOR PUBLIC RELEASE.
The decision issued on the date below is subject to an ASBCA Protective Order.
This version has been approved for public release.

number or the page number of the reporter on which Huffman's brief relied (app. reply at 6). The cited reporter, 74-2 BCA ¶ 10,660, involves the appeal of Crawford Development and Manufacturing Company, not Remm Company, and that appeal does not involve the government's response to a contractor's request for clarification of a specification. *Crawford Dev. & Mfg.*, ASBCA No. 17565, 74-2 BCA ¶ 10,660. After some research, the Board found the cited reporter does contain an appeal by Remm Company that partially supports the proposition for which it is cited. *See Remm Co.*, ASBCA Nos. 18430, 18545, 74-2 BCA ¶ 10,876 at 51,767 (stating that "a contractor who makes a reasonable inquiry seeking clarification of a specification is entitled to a reasonable response" but is silent as to the timeliness of the response).

*Cases that do not support the proposition for which they cited*

g. Huffman's counsel cited *Env't Safety Consultants, Inc.*, ASBCA No. 53485, 05-2 BCA ¶ 33,080, for the proposition that "the Board has held, post-hoc measurements, absent a baseline and without controlling for intervening structural conditions, cannot meet the Government's burden to prove initial non-compliance" (app. reply at 8). The decision found at 05-2 BCA ¶ 33,080, is not an ASBCA appeal by Environmental Safety Consultants, Inc., but an appeal by Viacom, Inc., before the General Services Administration Board of Contract Appeals, relating to cost and pricing data. *Viacom, Inc.*, GSBCA No. 15871, 05-2 BCA ¶ 33,080. There are however, two appeals involving Environmental Safety Consultants, Inc. in the cited reporter (05-2 BCA ¶¶ 33,114, and 33,073), but neither of these appeals even remotely support the proposition for which the case was cited.[3]

h. Huffman's counsel cited *Allied Materials & Equip. Co. v. United States*, 569 F.2d 562, 564 (Ct. Cl. 1978) for the proposition that once Huffman "presented credible manufacturer testimony and photographic evidence of observable defects, the burden shifted to the Government to rebut that showing" (app. reply at 13). The page cited discusses the cardinal change doctrine and nothing in the case discusses burden shifting. *Allied*, 569 F.2d at 564.

---

[3] *Env't Safety Consultants, Inc.,* ASBCA No. 53485, 05-2 BCA ¶ 33,114, involves the Board's denial of the government's motion for relief from judgment, and does not discuss the government's burden to prove initial non-compliances. *Env't Safety Consultants, Inc.,* ASBCA No. 53485, 05-2 BCA ¶ 33,073, involves the parties' motions for reconsideration of the Board's quantum decision, and does not discuss the government's burden to prove initial non-compliances.

DOCUMENT FOR PUBLIC RELEASE.
The decision issued on the date below is subject to an ASBCA Protective Order.
This version has been approved for public release.

i. Huffman's counsel cited *R.P. Wallace, Inc. v. United States*, 63 Fed. Cl. 402 (2004) for the proposition that, "The Board has consistently held that where defective GFE affects the critical path, the contractor is entitled to time extensions and relief from default" (app. reply at 14). *R.P. Wallace, Inc.*, involved alleged government delays arising from defective specifications, did not involve a termination for default, and did not discuss defective government furnished equipment. 63 Fed. Cl. 402 (2004).

j. Huffman's counsel cited *McDonnell Douglas Corp. v. United States*, 323 F.3d 1006, 1016 (Fed. Cir. 2003), stating that Court held that a contracting officer's "reliance on assumptions inconsistent with contract terms constitutes arbitrary and capricious decision-making" (app. reply at 19). The Court did not address any standards associated with arbitrary and capricious decision-making anywhere in that case, let alone the pin cite included in the citation. *McDonnell Douglas Corp.* 323 F.3d at 100.

k. Huffman's counsel cited *Kalvar Corp. v. United States*, 543 F.2d 1298, 1301-02 (Ct. Cl. 1976) for the proposition that a contracting officer's "discretion in a termination is not unfettered and must be exercised reasonably in light of the contract's overall objectives" (app. reply at 20). The pages cited in *Kalvar Corp.* do not stand for the proposition for which they were cited. Instead pages 1301-02 of that decision discuss bad faith and abuse of discretion in connection with a termination for convenience. *Kalvar,* 543 F.2d at 1301-02.

*Incorrect citations to the hearing transcripts*

l. Huffman's counsel represented that Huffman's structural engineering expert, Mr. Weber, "testified that the GPPS beam and slab system had experienced cumulative deflection from a combination of dead load, live load, and piping strain after initial installation (TR, Vol. II, p. 173-174, ll. 4-25, 1-10; R4, Tab 33)" (app. reply at 8). Pages 173-174 of volume two of the hearing transcript contain the testimony of a different witness (Mr. Connole), and do not discuss cumulative deflection, dead load, live load or pipe strain. Tab 33 of the Rule 4 file, likewise, does not support the alleged testimony of Mr. Weber.

m. Huffman's counsel represented that the "Government presented no empirical monitoring data to refute Weber's calculation, relying instead on Mr. Demeaux's finite-element model – admittedly based on idealized design conditions rather than the actual measured field parameters (TR, Vol. II, p. 188-189, ll. 12-25, 1-6)" (app. reply at 9). The cited portion of

6

DOCUMENT FOR PUBLIC RELEASE.
The decision issued on the date below is subject to an ASBCA Protective Order.
This version has been approved for public release.

the transcript does not discuss Mr. Weber, Ms. Demeaux, or the modeling performed. Instead, the testimony discusses whether the site at present was ninety-five (95%) complete.

*Citations to non-existent pages in the hearing transcripts*

n. Huffman's counsel represented that pages 98-99 of volume three of the hearing transcript supported the statement that, "This meant that until the pump and motor scope advanced to the commissioning phase, the main electrical feeders for dependent systems could not be brought online" (app. reply at 16). The cited pages contain no hearing testimony at all – they contain the certificates of the court reporter, transcriber and proofreader.

o. Huffman's counsel represented that pages 144-46 of volume five of the hearing transcript support the statement that the contracting officer "stated that completion was 'critical' without addressing the fact that the re-procurement contract was not issued until five years following termination . . . ." (app. reply at 18). The cited pages do not exist because volume five of the hearing transcript ends on page 116.

p. Huffman's counsel represented that pages 118-19 of volume five of the hearing transcript contain the contracting officer's testimony under cross-examination where she "conceded she did not issue a bilateral modification creating separate completion dates" (app. reply at 18). The cited pages do not support the factual contention for which they were cited because volume five of the hearing transcript ends on page 116.

DECISION

*AI is known to "hallucinate" fictitious cases*

It is now well known that AI platforms can generate non-existent cases. *See Sanders v. United States*, 176 Fed. Cl. 163, 168-170 (2025) ("It is no secret that generative AI programs are known to 'hallucinate' non-existent cases, and with the advent of AI, courts have seen a rash of cases in which both counsel and *pro se* litigants have cited such fake, hallucinated cases in their briefs."); *Benjamin v. Costco Wholesale Corp.*, 779 F. Supp. 3d 341, 342 (E.D.N.Y. 2025) (stating that while "AI tools can make legal work more efficient, they also can 'hallucinate' – that is, they produce blatantly incorrect information that, on its face, appears truthful."). These hallucinated cases provide the outward appearance of real judicial decisions, because they include indicia such as case names and docket numbers, real case reporters with

DOCUMENT FOR PUBLIC RELEASE.
The decision issued on the date below is subject to an ASBCA Protective Order.
This version has been approved for public release.

page numbers and pin cites, real courts and judges who practice before those courts, provide dates on which a decision was purportedly issued, etc. Some or all these markers of real cases may be fictitious. *See e.g., United States v. Hayes*, 763 F. Supp. 3d 1054, 1065 (E.D. Cal. 2025) (recounting the court's suspicions that the primary case on which defendant's lawyer relied was the result of an AI hallucination because the cited case bore an inaccurate case name, court, and year), *recon. denied*, No. 2:24-CR-0280, 2025 WL 1067323, at *6 (E.D. Cal Apr. 9, 2025).

*Prevalence of AI hallucinations in legal papers*

Regrettably, the improper use of AI in the legal profession is not something new, and it is not the first time this tribunal has been presented with allegations about briefing containing AI hallucinations. *See e.g., Medical Receivables Sols., Inc.*, ASBCA No. 64036, 25-1 BCA ¶ 38,860 at 189,094 (alleging *pro se* appellant's opposition to the government's motion for summary judgment was generated using AI to create "baseless and unsupported attacks" on government personnel and false statements concerning FAR clauses); *see also Benjamin,* 779 F. Supp. 3d at 342-43 (recounting that in recent years courts "have continued to receive submissions littered with AI-generated 'case' citations" and noting that the "epidemic of citing fake cases has continued unabated . . . ."). Generative AI has fooled not only those representing themselves *pro se*, but also experienced attorneys who work at law firms. *Compare Sanders*, 176 Fed. Cl. 163 (involving a pro se plaintiff who cited fake AI-generated cases in briefs), *with Johnson v. Dunn*, No. 2:21-CV-1701, 2025 WL 2086116 (N.D. Ala. July 23, 2025) (involving five problematic case citations, some entirely fictitious and others that did not stand for the propositions for which they were cited, included in papers submitted by lawyers from a law firm).

*The Corps' Motion to Strike*

In the instant appeal, the Corps moves to strike the entirety of Huffman's post-hearing reply brief (reply brief) contending that it appeared to have been generated by artificial intelligence (AI) because it contained "multiple false or misleading statements of law and fact generated by artificial intelligence," including citations that were unsupported by the hearing transcript and Rule 4 file, and fictitious cases or cases that did not support the propositions for which they were cited (SOF ¶ 5).

In response to the Corps' motion to strike, counsel for Huffman admitted to using AI to draft its reply brief and did not dispute any of the numerous errors identified by the Corps (SOF ¶ 6). Huffman's counsel recognized "the potential for AI-generated errors" and "implemented safeguards" including a review of the reply brief by "two experienced attorneys" and an "experienced paralegal" (*id.*).

8

DOCUMENT FOR PUBLIC RELEASE.
The decision issued on the date below is subject to an ASBCA Protective Order.
This version has been approved for public release.

*The Corps' Motion to Strike will be treated as a Motion for Sanctions*

As the Board's Rules do not address motions to strike, we are guided by the Federal Rules of Civil Procedure (FED. R. CIV. P.). *Northrop Grumman Corp.*, ASBCA No. 62165, 21-1 BCA ¶ 37,922 at 184,177 (citing *Fru-Con Const. Corp.*, ASBCA Nos. 53544, 53794, 03-2 BCA ¶ 32,275 at 159,673); *see also TTF, L.L.C.*, ASBCA No. 58494, 13-1 BCA ¶ 35,343 at 173,463-64 (citing *Thorington Elec. Constr. Co.*, ASBCA No. 56895 *et al.*, 10-2 BCA ¶ 34,511 at 170,177 n. 3 (stating that "in appropriate circumstances, where our rules do not address a matter, we commonly look to the Federal Rules of Civil Procedure for guidance.")). Fed. R. Civ. P. 12(f) provides that "[a] court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The Corps' motion to strike does not address a pleading. Instead, it asks the Board to strike Huffman's reply brief altogether because it contains false or misleading statements of law and fact that are not based on the record or caselaw, which is more akin to a motion for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure. *See e.g., OTG New York, Inc. v. OTTOGI Am., Inc.*, No. 24-CV-07209, 2025 WL 2671460 at *1-*3 (D.N.J. Sept. 18, 2025) (issuing sanctions after finding plaintiff's lawyer violated his Rule 11 obligations by striking plaintiff's reply brief that contained non-existent cases and fabricated legal propositions derived from AI). As such, the Corps' motion will be considered through that lens.

*Rule 11 of the Federal Rules of Civil Procedure*

Because the Board's Rules do not contain the equivalent of Rule 11, it has, in the past, looked to the Federal Rules of Civil Procedure for guidance. *Globe Const. Co.*, ASBCA No. 21365, 78-2 BCA ¶ 13,486 at 66,005, *aff'd Globe Const. Co., Inc. v. United States*, 230 Ct. Cl. 957 (1982). Rule 11(b) imposes strict responsibilities on an attorney or party who signs a pleading, motion or other paper "whether by signing, filing, submitting, or later advocating it . . . that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that, among other things, "the claims, defenses, and other legal contentions are warranted by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law"; that the "factual contentions have evidentiary support"; and, that "the denials of factual contentions are warranted on the evidence." FED. R. CIV. P. Rule 11(b)(2)-(4).

The standard of care imposed by Rule 11 "is one of reasonableness under the circumstances." *Bus. Guides, Inc. v. Chromatic Commc'ns, Enters., Inc.*, 498 U.S. 533, 551 (1991). Rule 11 places "an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed," such that Rule 11 "creates an 'incentive to stop, think and investigate more carefully before serving and filing papers.'" *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 460

9

DOCUMENT FOR PUBLIC RELEASE.
The decision issued on the date below is subject to an ASBCA Protective Order.
This version has been approved for public release.

(S.D.N.Y. 2023) (citations omitted); *see also* FED. R. CIV. P. 11(b), advisory committee notes to 1993 amendment (explaining that "[t]he rule . . . require[s] litigants to 'stop-and-think' before initially making legal or factual contentions"). At a minimum, Rule 11 requires that "attorneys read, and thereby confirm the existence and validity of, the legal authorities on which they rely . . . to ensure that the arguments are based on those authorities are 'warranted by existing law', FED. R. CIV. P. 11(b)(2), or otherwise 'legally tenable.'" *Park v. Kim*, 91 F.4th 610, 615 (2d. Cir. 2024), citing *Cooter & Gell v. Hartmax Corp.* 496 U.S. 384, 393 (1990). An attorney who signs a legal document certifies that they have "read the document, [] conducted a reasonable inquiry into the facts and the law and [are] satisfied that the document is well grounded in both, and is acting without any improper motive." *Bus. Guides, Inc.*, 498 U.S. at 542.

Rule 11 provides for sanctions, should a party be in violation of the requirements for representations made in papers submitted to the court. FED. R. CIV. P. Rule 11(c). The types of submissions that warrant Rule 11 sanctions fall into three categories: "factually frivolous (not 'well grounded in fact'); legally frivolous (not 'warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law'); and papers 'interposed for an improper purpose.'" *Bus. Guides, Inc. v. Chromatic Commc'ns Enter., Inc.*, 892 F.2d 802, 808 (9th Cir. 1989), *aff'd* 498, U.S. 533 (1991). Rule 11 provides guidance to courts on the nature of sanctions, such that a sanction imposed under Rule 11 "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." FED. R. CIV. P. 11(c). *See also* FED. R. CIV. P. 11(c), advisory Committee Notes to 1993 amendment ("[T]he purpose of Rule 11 sanctions is to deter rather than to compensate . . . ."). Rule 11 provides that sanctions may be monetary or non-monetary, including, for example, "striking the offending paper; issuing an admonition, reprimand or censure; requiring participation in seminars or other educational programs; ordering a fine payable to the court; referring the matter to disciplinary authorities," etc. FED. R. CIV. P. 11(c), advisory Committee Notes to 1993 amendment.

*Sanctions for AI-related offenses under Rule 11*

Those that rely on generative AI for purposes of their submissions to a tribunal run the risk of running afoul of Rule 11 and violating their duty of candor and professional responsibilities.[4] *Cf. W.B.&A., Inc.*, ASBCA No. 32524, 89-2 BCA

---

[4] The Board notes that Rule 3.3(a)(1) of the Tennessee Rules of Professional Conduct provides that a lawyer shall not knowingly "make a false statement of fact or law to a tribunal." "Knowingly" denotes "actual awareness of the fact in question" but may be "inferred from circumstances." The commentary to this rule provides further that "[a]n advocate is responsible for pleadings and other

DOCUMENT FOR PUBLIC RELEASE.
The decision issued on the date below is subject to an ASBCA Protective Order.
This version has been approved for public release.

¶ 21,736 at 109,326 (making clear counsel's professional responsibilities extend to ensuring that statements made are accurate and supported by the record). Filing of papers "without taking the necessary care in their preparation," including relying on fictitious opinions to persuade a court or an adversary, is an abuse of the judicial system subject to Rule 11 sanctions. *Mata*, 678 F. Supp. 3d at 460-61 (citing *Cooter & Gell* 496 U.S. at 398 (1990) and *Salovaara v. Eckert*, 222 F.3d 19, 34 (2d Cir. 2000)). Courts addressing the use of AI in court filings without proper verification have found parties to be in violation of Rule 11 and have issued sanctions accordingly, particularly where the offending party is represented by counsel. *See e.g., Benjamin,* 779 F. Supp. 3d at 347-50 (providing examples of cases involving monetary sanctions where a party's attorney submitted fake AI-generated cases and imposing sanctions on plaintiff's attorneys for the same); *Mata*, 678 F. Supp. 3d at 466 (imposing monetary sanctions against plaintiff and non-monetary sanctions against plaintiff's attorneys and their law firm for, among other things, relying on several AI-generated hallucinated cases and fabricated excerpts of the fictitious cases in response to a court order). These courts have imposed monetary and non-monetary sanctions including payment of the opposing party's attorney's fees, striking filings, dismissal of the action, and initiating disciplinary actions. *Sanders*, 176 Fed. Cl. at 170 (2025) (citing *Hayes*, 763 F. Supp. 3d at 1071-73). Others have imposed less conventional sanctions in addition to monetary fines, requiring the offending attorneys to share the opinion and order granting a motion for sanctions for AI-related Rule 11 violations with their clients and the judges whose names were associated with hallucinated cases. *Mata*, 678 F. Supp. 3d at 466. In other instances, courts have required offending attorneys to self-report to the disciplinary boards of their bars. *See e.g., Dehghani v. Castro*, 782 F. Supp. 3d 1051, 1055-59 (D.N.M. May 9, 2025) (affirming sanctions issued by a magistrate judge against attorney who relied on AI-fabricated cases and inaccurate caselaw citations, including requiring the offending attorney to self-report to state bar disciplinary boards); *Lipe v. Albuquerque Public Schools*, No. 23-899, 2025 WL 2695244, at *3-4 (D.N.M. Sept. 22, 2025) (ordering offending attorney to self-report to state bar disciplinary boards, including attaching a copy of the order for sanctions and explaining the facts that gave rise to the sanctions).

The Board possesses considerable discretion in evaluating a motion for sanctions, and determining, what, if any, sanctions are appropriate under the circumstances. *Bruce E. Zoeller*, ASBCA No. 56578, 10-2 BCA ¶ 34,549 at 170,390, *aff'd Zoeller v. McHugh*, 626 Fed. App'x. 983 (Fed. Cir. 2015); *General Dynamics Ordnance and Tactical Sys., Inc.*, ASBCA Nos. 56870, 56957, 12-1 BCA ¶ 34,944 at 171,806. While the Board is without authority to issue monetary sanctions, *ADT Constr. Group, Inc. by Timothy S. Cory, Chapter 7 Trustee*, ASBCA No. 55358,

---

documents prepared for litigation" and that "[l]egal argument based on a knowingly false representation of law constitutes dishonesty toward the tribunal."

11

DOCUMENT FOR PUBLIC RELEASE.
The decision issued on the date below is subject to an ASBCA Protective Order.
This version has been approved for public release.

13 BCA ¶ 35,307 at 173,324, *recon. denied*, 14-1 BCA ¶ 35,508 at 174,041, the Board has non-monetary sanctions available to it and has used them in appropriate circumstances. *See e.g., Metadure Corp.*, ASBCA No. 23121 *et al.*, 82-1 BCA ¶ 15,496 at 76,867 (dismissing appeals with prejudice for failure to comply with Board-issued discovery orders), *aff'd Metadure Corp. v. United States*, 6 Cl. Ct. 61 (1984); *Integrity Mgmt. Int'l, Inc.*, ASBCA No. 18289, 75-1 BCA ¶ 11,235 at 53,479-81 (excluding certain evidence for failure to comply with discovery orders) *recon. denied*, 75-2 BCA ¶ 11,602 at 55,380; *Bromely Contracting, Inc.*, ASBCA No. 20271, 77-2 BCA ¶ 12,715 at 61,761 (striking three documents attached to appellant's post-hearing brief for failure to move them into evidence during the hearing).

When issuing sanctions, the Board considers factors such as "the presence or absence of willfulness, the degree of prejudice to the parties, the delay, burden and expense incurred by the movant, and evidence of compliance with other Board orders." *Bruce E. Zoeller*, 10-2 BCA ¶ 34,549 at 170,390 (citing *Lockheed Martin Corp.*, ASBCA No. 45719, 99-1 BCA ¶ 30,312 at 149,884). The Board has also considered the presence of "bad faith, callous disregard of responsibilities or any other behavior which could be reasonably construed as a basis for sanctions," factors that are applicable to this situation. *Hettich and Co. GmbH*, ASBCA No. 38781, 93-1 BCA ¶ 25,442 at 126,698 (citing *Societe Internationale v. Rogers*, 357 U.S. 197, 212 (1958), and, *National Hockey League v. Metropolitan Hockey Club,* 427 U.S. 639, 643 (1976)).

Huffman's opposition to the government's motion to strike does not explain why or provide any extenuating circumstances for why its counsel relied on "AI technology to assist in formulating portions of [Huffman's] reply brief, including generating citations" (SOF ¶ 6). We do know however, that Huffman's counsel is not unfamiliar with AI technology, having utilized it in other matters (*id.*). We also know that Huffman's counsel recognized "the potential for AI-generated errors" and purportedly "implemented safeguards to ensure the accuracy of the citations and the overall integrity of the filing" by having two experienced attorneys and an experienced "qualified and trusted" paralegal review the reply brief (*id.*). It is unclear from Huffman's response to the Corps' motion what the review or verification by the two experienced attorneys and trusted paralegal consisted of, but we do know that whatever it was, it was woefully insufficient and lacking in the diligence expected of attorneys that practice before this Board. Not only did Huffman's reply brief contain fictitious AI-generated cases and citations to cases that do not stand for the proposition for which they were cited, but the brief also contains inaccurate citations to hearing transcripts and the Rule 4 file, such that over seventy percent (70%) of the citations were inaccurate (SOF ¶ 7), suggesting that Huffman's counsel relied on AI to summarize the hearing transcripts and identify relevant documents in the Rule 4 file. A great majority of the cases in which sanctions have been imposed on parties relying

DOCUMENT FOR PUBLIC RELEASE.
The decision issued on the date below is subject to an ASBCA Protective Order.
This version has been approved for public release.

on AI-generated hallucinations, have been for the submission of fictitious judicial opinions. *Johnson*, 2025 WL 2086116, at \*16-21; *Benjamin,* 779 F. Supp. 3d at 342; *Mata*, 678 F. Supp. 3d at 448. Here, the transgressions go beyond that to include numerous fictitious citations to the Rule 4 file and hearing transcripts (SOF ¶ 7), citations that could be verified with minimal effort. Even the most inexperienced attorney is expected to know how to conduct legal research and accurately cite cases and verify facts cited in legal papers. The sheer number and magnitude of the errors reflected in Huffman's reply brief suggests the errors were not inadvertent (e.g., resulting from typos) – they are at worst a blatant disregard of professional responsibilities, and at best, a disastrous failure to ensure the safeguards put in place were adequate and effective. *See Mata*, 678 F. Supp. 3d at 448, 464-65 (finding attorneys and their law firm in violation of their Rule 11 obligations when they submitted "non-existent judicial opinions with fake quotes and citations" created by an AI tool).

The Board notes that the Corps' motion, both timely filed and thoroughly researched, demonstrates that government counsel spent a significant amount of time fact-checking Huffman's reply brief and bringing its numerous errors to the Board's attention. The Board for its part, spent a significant amount of time, verifying the errors identified by the government, and in doing so, found even more errors in Huffman's reply brief (SOF ¶ 7). As a result, Huffman's counsel not only wasted the government's time, but also judicial resources. *Sanders*, 176 Fed. Cl. at 169; *Mata*, 678 F. Supp. 3d at 448. Wasted time aside, Huffman's counsel's failure to employ AI without verifying its accuracy, not only deprives its client of arguments based on real judicial precedent, *Mata*, 678 F. Supp. 3d at 448, but it also sows doubt in the citations and legal arguments set forth in Huffman's post-hearing brief. Briefs that cannot be relied on do not serve the best interests of the client or the Board. *W.B.&A., Inc.*, 89-2 BCA ¶ 21,736 at 109,326.

If Huffman's counsel believes that by stating the reply brief was reviewed by two experienced attorneys and a paralegal, he would avoid reprimand or sanction, the Board would point out that this fact makes Huffman's counsel's position worse, not better, for courts have sanctioned attorneys even where no review of AI-generated work product took place. *See e.g., Johnson*, 2025 WL 2086116 at \*16-19 (sanctioning individual attorneys for failure to verify AI-generated legal citations); *Wadsworth v. Walmart, Inc.*, 348 F.R.D. 489, 493-94, 498-99 (D.Wyo. 2025) (sanctioning attorneys who did not review motions containing eight AI-hallucinated cases that did not exist, even though the sanctioned attorneys did not know AI had been utilized); *Versant Funding, LLC v. Tersa Breakbulk Ocean Navigation Enters., LLC*, No. 17-CV-81140, 2025 WL 1440351, at \*5-7 (S.D. Fla. May 20, 2025) (imposing sanctions on attorney who failed to verify case citations in a response drafted by pro hac vice counsel who utilized AI). It is inconceivable to the Board, that a proper review by two experienced

13

DOCUMENT FOR PUBLIC RELEASE.
The decision issued on the date below is subject to an ASBCA Protective Order.
This version has been approved for public release.

attorneys and a paralegal, should result in over seventy percent of the citations being inaccurate.

Although the Board appreciates that Huffman's counsel acknowledges and takes responsibility for the errors and states the errors were "unintentional and regrettable" (SOF ¶ 6), the overwhelming number of errors in Huffman's reply brief, the nature of those errors, and the failure of the purported safeguards, merits striking Huffman's reply brief in its entirety. Rule 11 leaves "no room for a pure heart, empty head defense." *Bus. Guides, Inc.*, 892 F.2d at 808 (2d Cir. 1989), *aff'd* 498, U.S. 533 (1991) (citation omitted); *see also Benjamin*, 779 F. Supp. 3d at 350 (stating that "regret and apologies are not necessarily enough to avoid the imposition of sanctions for the submission of non-existent legal authority."). The Board considered striking only those parts of the brief that contained factual contentions or arguments that were supported by fictitious cases, cases that did not support the factual contention for which they were cited, and incorrect hearing transcript or Rule 4 citations, but doing so, renders the brief nonsensical given the number of errors contained therein. We note that the Board also considered the prejudice to Huffman resulting from its reply brief being stricken in its entirety (as well as denying its request to file a revised reply brief with corrected citations) and find such prejudice to be negligible given that Huffman has already been afforded the opportunity to present its facts and arguments in a seven-day hearing and a post-hearing brief.

DOCUMENT FOR PUBLIC RELEASE.
The decision issued on the date below is subject to an ASBCA Protective Order.
This version has been approved for public release.

<u>CONCLUSION</u>

While other tribunals confronted with less egregious AI-generated errors than presented here have imposed other non-monetary sanctions (e.g., requiring the offending attorneys to self-report to disciplinary boards), the Board limits itself to striking the offending reply brief because, as emphasized in Rule 11, the sanctions should be tailored "to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." FED. R. CIV. P. 11(c). It is with that goal in mind, and, for the reasons set forth above, the Board grants the government's motion to strike and denies Huffman's motion for leave to file a revised reply brief.

Dated: October 23, 2025

ROBYN L. HAMADY
Administrative Judge
Armed Services Board
of Contract Appeals

I <u>concur</u>

OWEN C. WILSON]
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I <u>concur</u>

MICHAEL N. O'CONNELL
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

15

DOCUMENT FOR PUBLIC RELEASE.
The decision issued on the date below is subject to an ASBCA Protective Order.
This version has been approved for public release.

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 62591, 62783, Appeals of Huffman Construction, LLC, rendered in conformance with the Board's Charter.

Dated:  October 23, 2025

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals